**Welton L. SWINNEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 23897.

United States Court of Appeals
Fifth Circuit.

March 7, 1968.

Frank W. Hunger, Greenville, Miss., for appellant.

H. M. Ray, U. S. Atty., E. Grady Jolly, Jr., Asst. U. S. Atty., Oxford, Miss., for appellee.

Before RIVES, COLEMAN and GOD-BOLD, Circuit Judges.

COLEMAN, Circuit Judge:

Welton L. Swinney was convicted of conspiracy to pass, utter, and publish forged and altered United States postal

money orders in violation of 18 U.S.C. § 371, and of stealing property of the United States Post Office Department from two post offices, and aiding and abetting thereof, in violation of §§ 2, 1707, and 2115 of Title 18, U.S.C. We affirm.

Appellant was represented in the District Court by appointed counsel. He has been represented here by counsel appointed by this Court, a former law clerk to this Court, who has filed an ably presented brief in behalf of his client. Appellant has also filed a well written pro se brief.

Appointed counsel urges only one ground for the reversal of this conviction. He contends that the trial court committed reversible error in admitting into evidence certain money order forms found in an automobile occupied by the appellant but driven by another, in the vicinity of Huntsville, Alabama.

The pro se brief further urges that there was no substantial evidence to support the verdict of the jury, that the prosecuting attorney made misleading and improper remarks to the jury in his closing argument, and that appointed trial counsel failed to render effective assistance by absenting himself from a key portion of the trial.

■ Appellant was tried jointly with Dillard E. Henderson [No. 23,728, this day affirmed] and on the authorities cited in that case we again hold that the evidence was sufficient to sustain the convictions.

■ A close examination of the record fails to reveal the exact time of counsel's absence, if any, from the trial. Appellant says in his brief that it occurred during the testimony of an accomplice. The record shows, however, that counsel was present at the conclusion of this testimony and expressly declined to cross-examine the accomplice.

The argument of the prosecutor was not objected to. We are of the view, however, that this argument, even if it had been objected to, did not constitute reversible error.

The crucial question on this appeal revolves around the admission into evidence of the money order forms found in the automobile occupied by this appellant.

An accomplice in this case testified that on the night of September 3, 1965, he, Swinney, Henderson, and one Washam burglarized the Post Office at Nesbitt, Mississippi, and removed therefrom two mailsacks of "loot". They then proceeded to Red Banks, Mississippi, where similar acts were committed.

Robert Moder, a patrol sergeant of the Huntsville, Alabama, Police Department testified that as of September 14 the Huntsville police had been alerted to watch for a white 1961 four-door Oldsmobile, occupied by a described man and woman who were reportedly traveling in this vehicle and passing forged Post Office money orders. On September 16, while he was off duty, the police officer saw a car fitting the above description. He pulled along side and immediately concluded that the driver matched the description of the man named in the "alert". The officer was unarmed and had no police radio, so he followed the Oldsmobile for about five miles, awaiting developments. A woman, meeting the prior description, occupied the front seat. Another man [who turned out to be Swinney] was sitting on the rear seat of the vehicle. He was handling a shotgun, and both passengers were drinking beer. When the vehicle stopped for a traffic light, a dogcatcher pulled up beside the officer and was asked to call in on his radio for assistance. Two Huntsville police patrol cars subsequently appeared and stopped the Oldsmobile. The driver was visibly intoxicated and was promptly arrested for driving while intoxicated, a misdemeanor under Alabama Law, Title 14 §§ 120, 120(1), Alabama Code, 1958 Ed. The woman was arrested for drinking in public, and Swinney was arrested for public drunkenness, likewise an offense under the cited Code section. All three individuals pleaded guilty to these offenses.

Whether by search or simply by observation through the automobile win-

dow, and it is not clear which, Sergeant Moder saw, or found, on the floor between the front and rear seats a transparent "envelope" containing the money orders in question, which turned out to be a part of those previously stolen on September 3, 1965.

Upon mature reflection, it seems that the only way to state the testimony with total accuracy is to repeat it verbatim, although at the expense of greatly extending this opinion.

At various points, the testimony of the officer as to the location of the money orders, was as follows:

(In Chambers, and not in the presence of the jury).

Q. Was a search made of their automobile?

A. Yes, sir; it was.

Q. And did this search produce anything?

A. Yes, sir; it did.

Q. What did it produce?

A. * * * on the floor in the back of the vehicle I found a cellophane envelope containing some money orders.

 * * * * * *

Q. And did you participate in the arrest of these individuals?

A. Yes, sir. I was actually the first one out of the car after the officers had them pulled over.

Q. And what did you say whenever you pulled up to arrest them?

A. I first asked Mr. George [the driver] to step out of the car, and he was visibly intoxicated, and I personally searched him and I led him over to one of the patrol cars to separate the people.

Q. Well, what did you tell them at the time you pulled them over? Did you advise them they were under arrest at that time?

A. Yes, sir.

Q. For what reason?

A. Mr. Swinney for public drunkenness and Miss Gold for drinking in public and Mr. George for driving while intoxicated.

Q. And when was the search of the automobile made?

A. After we had them all out of the car, although Miss Gold was still seated in the front seat of the car.

Q. This search was made at the time of the arrest?

A. Yes, sir.

Q. And what did the search produce?

A. Well, in the back seat was this— it was an unloaded shotgun, as I found out later. * * * and in the back on the floor were eleven money orders in a plastic envelope, plastic bag.

ON CROSS EXAMINATION:

Q. You didn't stop him because you thought he was driving under the influence, did you, Sergeant?

A. He was intoxicated.

Q. But you didn't know that until after you stopped him, if he was, did you?

A. I'd have no way of knowing until I would see the gentleman.

Q. And the reason you stopped him was because you had some call from some other place to look out for a 1961 Oldsmobile car and a blond woman and a man. That's correct, isn't it?

A. We had the description to look for such a car.

Q. And that was the reason you stopped the car, wasn't it, Sergeant?

A. Primarily; yes, sir.

At this point, and after the reception of this testimony before the trial judge in chambers, the government withdrew the offer of the money orders in evidence. Later, Sergeant Moder was recalled:

Q. And did you make a search of the automobile incident to the arrest?

A. Yes, sir; I did.

Objection to the form of the question and sustained.

Mr. Moder subsequently testified that he made the search within a minute, two or three minutes, after the arrest. The defense again objected to the admission of the money orders and the objection was overruled, the trial judge stated, "I hold as a matter of law that the arrest was legal and the search incident to the arrest was proper and that evidence obtained by that search bearing on the case being tried is admissible".

On cross-examination, Sergeant Moder then testified as follows:

> "Just standing by the back window on either side, they were in plain view on the floor, where your feet would rest in the back seat. They were on the floor.

Q. You mean the bag was on the floor?

A. Right, and you can see through the bag. It is plainly visible what the contents were.

Q. From the outside of the car?

A. Yes, sir.

■ It is thus to be noticed from the foregoing testimony, that an important element is glaringly absent: the prosecution made no effort to show that the information as to the description of the automobile and its occupants came from a source known to be reliable or that was otherwise reasonably trustworthy. The mere fact that *someone* told the Police Department to be on the lookout for the vehicle and its occupants could not justify an arrest without a warrant, Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ But whether the action of the officers in "pulling over" the car and approaching it was valid, either as an arrest or as an investigatory stop, we need not determine. Assuming that it was not valid we conclude the evidence obtained from the car was properly admissible. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) does not command that all evidence is fruit of the poisonous tree simply because it would not have come to

light but for the illegal actions of the police. The inquiry is whether the evidence has been come at "by means sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

■ Before the vehicle was stopped Sergeant Moder knew that Swinney, in the rear seat, was armed with and handling a shotgun and that Swinney and Miss Gold were drinking beer. After the vehicle was stopped and Moder dismounted from his car and came up to the stopped vehicle he could, and did, see that the driver and Swinney were drunk. After he had the two men out of the car he searched it and found the shotgun in the rear seat. If he first saw the money order forms through the window they were within the "plain sight" exception. But if he first saw them in the search of the car the result is no different.

Under Tit. 15, § 154, Ala.Code (1958 Recompilation) the officer was authorized to arrest without a warrant for a public offense committed in his presence. He arrested the driver for driving while under the influence, Swinney for public drunkenness and the woman for drinking in public. Subsequently all pleaded guilty to the charges. The evidence does not show either a pretextual arrest or a pretextual search.

■ Moder had not only a right but a duty to take action to prevent possibility of harm to himself, other officers and the public at large, inherent in the combination of intoxicated men plus a shotgun. He exercised his right and discharged his duty by making the arrests and by searching the car to locate the gun and get it in safe custody. The search was incident to a lawful arrest and was valid. The means was "sufficiently distinguishable to be purged of the primary taint," if in fact there was a primary taint.

We hold that the trial court committed no error in admitting the money orders into evidence.

Affirmed.