Albert William **HALE**, Petitioner-Appellant,

v.

C. Murray **HENDERSON**, Warden, Tennessee State Penitentiary, Respondent-Appellee.

No. 18161.

United States Court of Appeals
Sixth Circuit.

Sept. 17, 1968.

Thomas D. Heekin (court appointed), Cincinnati, Ohio, for petitioner-appellant.

James M. Tharpe, Special Counsel for the State of Tennessee, Memphis, Tenn., for respondent-appellee.

Before WEICK, Chief Judge, and PHILLIPS and PECK, Circuit Judges.

PER CURIAM.

Petitioner was convicted of first degree murder, and following exhaustion of his remedies in the Tennessee courts instituted habeas corpus proceedings in the District Court. The present appeal followed dismissal of the habeas corpus petition.

The jury verdict of guilty could not have been obtained nor sustained in the absence of petitioner's oral and written confessions. Independent testimony established that he was introduced to the murder victim by the proprietor of an establishment in which she was working as a waitress sometime around midnight on a Friday night; that the two of them, accompanied by two other men and two other women, went in petitioner's automobile to a second establishment where they "ordered whiskey and barbecue"; and that at about 2 or 2:30 a. m. the six of them and another woman who wanted a ride home left that establishment, with the deceased driving petitioner's car. After dropping off the others (one of whom testified that she got home at 2:55 a. m.), petitioner drove off with the deceased. Between 8 and 8:30 a. m. Saturday morning the deceased's body was found at the Arkansas end of a bridge connecting Memphis with that state.

Petitioner testified that after dropping his passengers off he drove a short distance, stopped the car and got out and vomited; that he had another drink, they moved on with deceased driving and that he passed out in the back seat; that when he came to the car was stopped, he attempted to get out of the car, was struck and fell unconscious; that when he regained consciousness he was alone and that he then drove home.

The deceased's place of employment was ascertained through the tracing of a linen service laundry mark in her apron, and investigation there led to petitioner's arrest at his home at 1:15 a. m. Sunday. A search of his car at that time,[1] according to the testimony of an arresting officer, revealed "blood stains on the right panel and the car had been washed and the seats were still damp at the time I looked at them." Petitioner's wife had had the car washed Saturday morning. Upon arrival at Memphis Police Headquarters at 1:30 a. m. petitioner was advised that he was under arrest, of his right to an attorney, of his right either to make a statement or to remain silent, and of the fact that anything he said could be used against him. Two officers testified that petitioner said he "did not want an attorney." He was questioned for about an hour and a half at that time, with at least four officers present. Petitioner testified that he was refused permission to call his wife in order to ask her to get in touch with his lawyer, stating that the officer in charge told him that he could make no calls until he told "exactly what happened."

Petitioner was interrogated again on Sunday afternoon and twice Monday afternoon. At the afternoon session his pregnant wife was brought in and her complicity as an accessory after the fact as a result of having had the car washed was at least hinted at, and the possibility

1. Petitioner-appellant's brief contains contentions concerning this search, but no issue on that subject is properly before this court.

of their six children being turned over to juvenile authorities was discussed. That evening petitioner was brought in, and an oral confession was followed by his signing a written confession a 8:16 p. m. Receipt in evidence of both of these confessions creates the only substantial issues of this appeal. The confession states that petitioner stabbed the deceased three times with "a long shiney [sic] knife" because "[s]he wanted some money for me to go with her," and that he thereafter took her body to the Arkansas end of the Harahan Bridge and dropped it through the railing to the ground below.

In its order dismissing the petition the District Court stated:

"In short, we have determined from the transcript of the record of this full and fair inquiry into the facts conducted in the State Court trial that both that Court and the Supreme Court of Tennessee correctly determined that petitioner's statements were freely and voluntarily given without promise of immunity or hope of reward. Since the trial took place in November 1965, it was necessary that the requirements of Escobedo v. [State of] Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], be met, but it was not necessary that the requirements of Miranda v. [State of] Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], be met. Johnson v. [State of] New Jersey, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882]. The record further amply supports the proposition that .petitioner did not request and was not denied an opportunity to consult with his lawyer before and when he made the involved statements and amply supports the proposition that he was effectively warned of his absolute constitutional right to remain silent; therefore, the requirements of the *Escobedo* case

supra, were more than met. 28 U.S.C. § 2254(d) (f)."

■ Although petitioner strongly urges in this Court that the *Escobedo*,[2] standards were not met, we conclude that the determination of the District Court on this point is not clearly erroneous. That does not mean, however, that the confessions were necessarily voluntarily given.

Petitioner testified that after signing the confession he finally went to sleep on Monday night for the first time since his arrest at 1:15 Sunday morning, and that from that time on he had been questioned continuously by four or more men, being moved "in and out of three rooms" in the Homicide Bureau. He further testified that he was never in a cell until after his confession on Monday night, and that he had received no water from the time of his arrest until after the confession, and that in fact he was given nothing to eat until Tuesday morning. The responsive evidence of the State is unsatisfactory, since various officers testified to specific segments of time but conceded that they knew nothing of what went on during different periods. A proffer of evidence as to petitioner's admission to the cell area of the jail was rejected,[3] and no evidence was offered to rebut petitioner's claim that he was not given anything to eat. The unsatisfactory nature of the state's case in this regard is well pointed up by the following quotation from the respondent-appellee's brief in this court:

"Since Lt. Marshall was conducting the investigation and since Petitioner-Appellant *apparently* was turned back to the jail turnkey after every interrogation it can be safely *assumed* that he was returned to his cell in the jail and that no other interrogations were conducted." (Emphasis supplied.)

---

2. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

3. This rejection was based on the Trial Court's interpretation of the Tennessee business records act and excluded jail records purporting to show prisoner whereabouts which were offered during rebuttal.

What "apparently" occurred is of course of no moment, and we decline to "assume" that petitioner was returned to his cell between questioning sessions and that "no other interrogations were conducted." Petitioner's testimony to the effect that he endured 43 hours of interrogation without sleep or food is without direct refutation in the record. In such circumstances we cannot agree that a hearing in the District Court is not required under the Townsend v. Sain (372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), 28 U.S.C. § 2254) standards. The cause is therefore remanded to the District Court for an evidentiary hearing and for a redetermination of the voluntariness of the confessions in the light of the evidence to be received.

Reversed and remanded.