Albert William HALE, Petitioner-Appellant,

v.

C. Murray HENDERSON, Warden Tennessee State Penitentiary, Respondent-Appellee.

No. 72-2185.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1973.

Decided Oct. 5, 1973.

Charles Stephen Ralston, New York City, for petitioner-appellant; Walter L. Bailey, Jr., Memphis, Tenn., and Jack Greenberg, New York City, on brief.

James M. Tharpe, Sp. Counsel, State of Tenn., Memphis, Tenn., for respondent-appellee; David M. Pack, Atty. Gen. of Tenn., Nashville, Tenn., of counsel.

Before EDWARDS and MILLER, Circuit Judges, and LAMBROS,* District Judge.

### EDWARDS, Circuit Judge.

This petitioner, after issuance of a writ of habeas corpus in his favor by the United States District Court for the Western District of Tennessee, appeals the two issues which the District Court decided against him. The state did not appeal from the District Court's grant of the writ of habeas corpus, but does resist reversal of the two issues decided in its favor below. In the interest of judicial economy, we decide both issues sought to be appealed.

Petitioner was indicted and convicted of first degree murder and sentenced to life imprisonment in 1965. Concededly he has exhausted state remedies on the issues concerned.

This case has a lengthy history. Its factual background may be found recited in Hale v. Henderson, 400 F.2d 655 (6th Cir. 1968) (where this court remanded the instant habeas corpus case to the District Court for evidentiary hearing on the admissibility of petitioner's confession), and in Hale v. Henderson, 336 F.Supp. 512 (W.D.Tenn.1972). On remand of this case after evidentiary hearing, the District Judge found facts warranting issuance of the writ of habeas corpus on the basis of an illegal arrest and unconstitutional search, the products of which had been admitted against appellant. But he specifically rejected petitioner's additional claims 1) that the confession which was introduced against him was the product of an illegal and unconstitutional arrest, and 2) that the grand jury which had indicted him was unconstitutionally constituted in that no black foreman or foreman pro tem of the jury had ever been appointed in Shelby County, albeit 150 such appointments had been made by the Court in whom state law placed that authority.[1]

As to the confession issue, the District Judge found that the arrest of petitioner on the day after the murder was discovered was not based on probable cause and was illegal and violative of petitioner's constitutional rights. The state does not dispute this finding. The District Judge also found that the confession was not the product of the illegal arrest:

Here the statement was made approximately 42 hours after the arrest and after petitioner had talked privately with his wife and after he had been confronted with all of the witnesses. He then hung his head and said he would tell what had happened.

---

* Honorable Thomas D. Lambros, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The District Judge who heard this case separated this issue from the others and it was heard before a District Judge from the Eastern District of Kentucky, who held that no relief was appropriate, 349 F.Supp. 567. The two decisions were subsequently incorporated in one order for purposes of this appeal.

The means of obtaining the statement, we therefore find, were "sufficiently distinguishable as to be purged of the primary taint."

The last quoted phrase is found in Wong Sun v. United States in the following sentences:

We now consider whether the exclusion of Toy's declarations requires also the exclusion of the narcotics taken from Yee, to which those declarations led the police. The prosecutor candidly told the trial court that "we wouldn't have found those drugs except that Mr. Toy helped us to." Hence this is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence "from an independent source," Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 [40 S.Ct. 182, 183, 64 L.Ed. 319]; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341 [60 S.Ct. 266, 268, 84 L.Ed. 307]. We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959). We think it clear that the narcotics were "come at by the exploitation of that illegality" and hence that they may not be used against Toy. Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Toy's statement had previously been held inadmissible because of an unconstitutional arrest during which the statement was made. The distinction made in this same case holding Wong Sun's statement to be admissible is instructive:

We turn now to the case of the other petitioner Wong Sun. We have no occasion to disagree with the finding of the Court of Appeals that his arrest, also, was without probable cause or reasonable grounds. At all events no evidentiary consequences turn upon that question. For Wong Sun's unsigned confession was not the fruit of that arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had "become so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307]. Wong Sun v. United States, supra at 491, 83 S.Ct. at 419.

█ In our instant case there was no break in custody (and apparently little break if any in custodial interrogation, see Hale v. Henderson, 400 F.2d 655, 657 (6th Cir. 1968)) prior to petitioner's confession. Contrary to the holding of the District Judge, we do not believe that "the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.'" Wong Sun v. United States, supra at 491, 83 S.Ct. at 419. The confrontations which preceded the statement were made possible by and were a product of the illegal arrest.

Appellee's brief cites only one case in support of its argument for affirmance. Swinney v. United States, 391 F.2d 190 (5th Cir. 1968). We find no reason to disagree with the holdings of the Fifth Circuit in that case, but consider the facts to be completely inapposite. The court there declined to decide whether or not there had been "a primary taint"

and held that the arrest and search were lawful and valid.

As to the confession issue, we reverse the District Court and hold that petitioner's custodial statement was a fruit of the poisonous tree and should be excluded at any retrial of this case.

As to the last appellate issue pertaining to the petitioner's claim of unconstitutional racial discrimination in the choice of (or the system of choosing) the grand jury foremen, we affirm the District Court.

Appellant did not raise this issue at the time of his original trial but subsequently did so in a state habeas corpus proceeding. We do not think we can properly dispose of this issue under the rationale of the recent decision of the United States Supreme Court in Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Here the Tennessee Supreme Court passed on the appellant's federal constitutional contention as to the grand jury foreman on the merits. In this situation settled case law holds that the federal courts will likewise reach the merits. Warden v. Hayden, 387 U.S. 294, 297 n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Irvin v. Dowd, 359 U.S. 394, 406, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959); Brown v. Allen, 344 U.S. 443, 486, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Herndon v. Lowry, 301 U. S. 242, 247, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

As to the grand jury foreman issue the judge who heard the evidence found:

Notwithstanding the petitioner's argument that grand jury foremen have been arbitrarily appointed and that over a period of history all grand jury foremen so appointed have been white, it appears that the particular grand jury indicting the petitioner was composed wholly of men selected from the venire. The grand jury indicting the petitioner was not chaired by the regular foreman, but by the foreman pro tempore, who was chosen from a body of grand jurors which were selected from the venire. There has been no evidence produced, nor has it been argued that the venire was discriminatorily constituted. The court must conclude that the venire was selected in a manner that did not systematically exclude blacks.

The foreman pro tempore was, prior to his appointment, a member of the grand jury body that ultimately rendered the petitioner's indictment. Following his appointment, his vacancy on the jury was filled by a member of the venire. Judge Sellers, Judge of Division I of the Criminal Court of Shelby County, Tennessee, wherein the petitioner was convicted, testified that the formation of the grand jury body was purely by lot. Certainly it cannot be contended that the foreman pro tempore's presence on the grand jury was effected by a discriminatory selection process.

The court does not believe that the fact that Judge Sellers exercised his discretion in appointing a member of the grand jury body to act as foreman pro tempore is significant where the members he chose from were all randomly selected. That Judge Sellers had the authority to select, in whatever manner he saw fit, the man whom he thought could best discharge the duties of foreman, was not discriminatory where the body from which the selection was made had been randomly created.

Some additional facts should be added.

It is undisputed that the grand jury which indicted petitioner was headed by a foreman pro tempore who was selected from the then existing grand jury (which had black grand jurors) and that that grand jury was chosen at random from a grand jury venire whose constitutionality is not disputed and which did in fact contain black citizens in general proportion to their presence in the population of Shelby County.

The state judge who had the statutory power to appoint both the grand jury foreman and in his absence the foreman pro tempore, testified that he had con-

sidered black grand jurors, but had largely relied upon the foreman's recommendation in choosing foremen pro tempore. The net effect of his testimony was to deny any racially discriminatory intention in the appointment of four foremen and 146 foremen pro tempore. Petitioner, however, points out that in fact all of the appointees were white.

Petitioner also points out that the grand jury foreman has important statutory duties in Tennessee, T.C.A. §§ 40–1510, 40–1622 (1955), and exercises a leadership role as well as casting a vote in the grand jury. Although petitioner points to no legal barrier to the appointment of black foremen and makes no claim of prejudice in his indictment from any action of the white foreman pro tempore of the grand jury which indicted him, we are by no means unimpressed by dominant race appointments in 150 successive instances.

We do not, however, find a curative measure available. Proportional representation is not required either in grand juries or in the appointment of grand jury foremen. Swain v. Alabama, 380 U.S. 202, 208–209, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Cassell v. Texas, 339 U.S. 282, 286–287, 70 S.Ct. 629, 94 L.Ed. 839 (1950).

We have read and considered the holding of the cases relied upon by petitioner in this case. Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). They all pertain, however, to unconstitutional exclusion of blacks from grand jury venires or grand juries. No such exclusion is claimed in this case.

The closest case in point appears to be Carter v. Jury Commission, 396 U.S. 320, 338–339, 90 S.Ct. 518, 528, 24 L. Ed.2d 549 (1970), where the Supreme Court again clearly rejected proportional representation as a constitutionally required (or permitted) remedy. *See also* Swain v. Alabama, *supra* and Cassell v.

Texas, *supra*. This case dealt with an historically all white jury commission which had consistently selected jury lists palpably distorted against Negro representation. Nonetheless, the Court held:

For present purposes we may assume that the State may no more exclude Negroes from service on the jury commission because of their race than from the juries themselves. But the District Court found the appellants had shown only that for many years the jury commission had been composed entirely of white men, and concluded that without more the appellants' attack failed for want of proof. We think that ruling was correct. Quite apart from the problems that would be involved in a federal court's ordering the Governor of a State to exercise his discretion in a particular way, we cannot say on this record that the absence of Negroes from the Greene County jury commission amounted in itself to a prima facie showing of discriminatory exclusion. The testimony before the District Court indicated that the Governor had appointed no Negroes to the Greene County commission during the 12 years preceding the commencement of suit. But the appellants' trial counsel conceded that he could not prove his charge of discriminatory selection without the testimony of the Governor. Whether or not such a concession was necessary, the statement may well have led counsel for the appellees to conclude that they were not obliged to produce witnesses on the State's behalf with respect to this phase of the appellants' case.

Nor can we uphold the appellants' present contention that, apart from the question of discrimination in the composition of the jury commission, the absence of Negroes from the commission compelled the District Court to order the appointment of Negro commissioners. The appellants are no more entitled to proportional representation by race on the jury commission than on any particular grand or

petit jury. Carter v. Jury Commission, *supra* at 338–339 of 396 U.S., at 528 of 90 S.Ct. (Footnote omitted.)

We feel the principles applied in *Carter* to jury commissioners would apply a fortiori to our instant problem dealing with jury foremen pro tempore. Thus we are bound to follow *Carter* until and unless it is overruled.

As to this issue the judgment of the District Court is affirmed.

The judgment of the District Court is reversed in part and affirmed in part, and the case is remanded to the District Court for further proceedings consistent with this opinion.

LAMBROS, District Judge (concurring).

I disagree with the majority opinion's application of Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970).

The major question presented on the grand jury issue is whether the rule that a black criminal defendant is entitled to have his indictment quashed, regardless of prejudice, if the grand jury venire selection system discriminates against blacks should be extended to a situation in which there has been systematic discrimination only with respect to one member of the grand jury venire —the grand jury foreman pro tempore. The majority opinion does not specifically discuss this issue. Instead, it rules that the issues are governed by the Supreme Court decision in Carter v. Jury Commission of Greene County. I disagree that *Carter* is relevant and binding for two reasons.

First, the language quoted from *Carter* in the majority opinion, which states that the facts presented regarding discrimination in the jury commission were insufficient to warrant a prima facie finding of discrimination, is not dispositive of the facts in this case. In general, a showing that the percentage of blacks selected over a period of time varied significantly from the percentage of blacks in the population and that the

selection system is amenable to discrimination is sufficient to warrant a prima facie finding of discrimination. Alexander v. Louisiana, 405 U.S. 625, 630, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Eubanks v. Louisiana, 356 U.S. 584, 587, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Neal v. Delaware, 103 U.S. 370, 397, 26 L.Ed. 567 (1881). Even in *Carter*, in a portion not quoted in the majority opinion, the Supreme Court cited as "compelling" evidence of discrimination the fact that the number of blacks on the jury rolls never exceeded 7 per cent while the county population was 15 per cent black—in spite of the lack of evidence of discriminatory intent on the part of those officials selecting the venire. *Carter, supra* at 327, 337, of 396 U.S., 90 S.Ct. 518. That portion of *Carter* quoted in the majority opinion is inapposite, since it merely indicates that the Court did not find the statistics regarding the jury commission of three persons as compelling as those for the larger number of persons on the venire. *Id.* 338, 90 S.Ct. 518.

Under the rationale developed in these cases, the evidence clearly warranted a prima facie finding of discrimination in the selection of the grand jury foreman pro tempore. The evidence showed that in the history of the county *none* of the 150 foremen and foremen pro tempore had been black while the county population was from 25 to 37 per cent black and further that the criminal trial judge who had the discretion with respect to the appointment of foremen and foremen pro tempore knew only a few blacks. It is difficult to imagine what more the majority would require to warrant a prima facie finding of discrimination except a confession on the part of the state judges that they were prejudiced against blacks and had intentionally avoided appointing them as grand jury foremen pro tempore.

Second, I believe the language quoted from *Carter* regarding proportional representation is not relevant here. While *Carter* was brought by black residents seeking representation on the grand

jury and grand jury commission, this case was brought by a criminal defendant seeking to have his indictment quashed. The relief sought in *Carter*, that of proportional representation, was denied by the Supreme Court. However, the relief sought here is not proportional representation but rather the quashing of an indictment because of systematic exclusion of blacks from the position of grand jury foreman pro tempore. With respect to this relief, the issue of proportional representation is irrelevant.

With respect to the major question presented, I would not require a quashing of the indictment because of discrimination in the selection of the grand jury foreman pro tempore. The remedy of quashing the indictment without a showing of prejudice was one adopted by Justice Harlan in 1881 because without it "the constitutional prohibition has no meaning. Neal v. Delaware, 103 U.S. 370, 397, 26 L.Ed. 567 (1881). Although the *Neal* ruling has been applied continuously during the past ninety years, it has not been broadened to apply to the situation in which the grand jury foreman pro tempore rather than the grand jury itself has been selected through a racially discriminatory system. Alexander v. Louisiana, 405 U.S. 625, 628–632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (applying *Neal* to discrimination with respect to the grand jury venire).

In determining whether the extraordinary remedy of quashing an indictment after conviction without a showing of prejudice should be broadened to cover this situation, it is important to examine the social policy reasons for which the original ruling was adopted to determine whether that rationale also compels the creation of a similar ruling regarding the grand jury foreman pro tempore. The *Neal* ruling was based on the lack of alternative remedies to discrimination with respect to the grand jury system and the importance of the grand jury in the criminal system. Since there are presently effective class action remedies

available for discrimination under 42 U.S.C. § 1983 and since the grand jury foreman pro tempore has a role less critically important to the criminal process than the entire grand jury, the rationale of the *Neal* ruling is not directly applicable to the case at hand. I would therefore decline to broaden the *Neal* ruling to require quashing the indictment without a showing of prejudice, even though the grand jury foreman pro tempore was selected under a discriminatory system.

For these reasons, I would concur with the result reached in the majority opinion.