[No. 15578½. *En Banc.* December 15, 1920.]

# HARRY J. EBERHART, *Respondent,* v. WILLIAM P. MURPHY *et al., Appellants.*[1]

FALSE IMPRISONMENT (6)—ARREST WITHOUT WARRANT—PROBABLE CAUSE—MATTER OF LAW. An action against a sheriff for false arrest and imprisonment should be dismissed where it appears from all the evidence that the arrest was made in reliance upon a written communication from the prosecuting attorney of another county that he had made an examination of the facts and was of the opinion that plaintiff was guilty of the crime of grand larceny.

SHERIFFS AND CONSTABLES (12-1, 36)—DUTY TO PRISONERS—PRE-SUMPTION—QUESTION FOR JURY. Evidence that a sheriff had notice of prior brutal treatment of a prisoner and of the rules of a "kangaroo" court" providing for severe punishment which might result in physical injuries, and that the sheriff had approved the rules, is sufficient to rebut the presumption that the sheriff had performed his duty in the protection of a prisoner, and to make a case for the jury.

ASSAULT (5)—DAMAGES—EXCESSIVE VERDICT. In an action for personal injuries inflicted in an assault upon a prisoner in jail, a verdict for $2,500 reduced to $1,500, is still excessive and should be further reduced to $750, where no substantial injuries were suffered from the assault, and plaintiff's condition is reasonably attributable to a chronic trouble and the operation necessary to relieve it.

HOLCOMB, C. J., dissents.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered March 27, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon a sheriff's official bond, after a trial on the merits. Affirmed on original appeal. Reversed on rehearing.

*Williamson & Luhman,* for appellants.

*Grady & Shumate,* for respondent.

## ON REHEARING.

TOLMAN, J.—This case was heretofore heard and decided by a department of this court, and the majority

[1]Reported in 194 Pac. 415.

and dissenting opinions of the department will be found in 110 Wash. 158, 188 Pac. 17, to which reference is made for a statement of the facts and issues. A rehearing having been granted, a majority of the court sitting *En Banc* is of the opinion that neither the majority nor the minority of the department is wholly right; hence it is necessary to state briefly the results at which we have now arrived.

It is fundamental that a peace officer may lawfully arrest without a warrant a person whom he has reasonable or probable cause to believe has committed a felony, and

"The question of probable cause, or reasonable grounds for suspicion in making the arrest, is one of law, unless the evidence out of which it arises is conflicting, in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and to submit to them only the question as to the existence of such facts." 2 R. C. L. 451.

Murphy's first knowledge of the subject-matter came to him through the presentation to him of a letter from Prosecutor Brown of Whatcom county, which reads:

W. P. Brown
Prosecuting Attorney                          Telephone 205.

PROSECUTING ATTORNEY
WHATCOM COUNTY
BELLINGHAM, WASHINGTON

June 9, 1917.

W. P. Murphy, Esq.,
    Sheriff Yakima County,
        North Yakima, Washington.
Dear Sir:

This will introduce Mr. Frank Leighton, who has been in this vicinity for some time representing Delco-Light Products.

Mr. Leighton has had some business relations with Harry J. Eberhart, and I am of the opinion that as a result of the representations and pretenses made by Mr. Eberhart that he is guilty

of the crime of grand larceny.  However, it is not the desire of
any one concerned to cause a prosecution of Mr. Eberhart, which
would result in expense to the taxpayers, if it is possible to avoid
such prosecution.

I have suggested to Mr. Leighton that he go to North Yakima
and see Mr. Eberhart, and endeavor to arrange with him for an
immediate settlement of the matter in issue, and in the event of
his inability to settle the matter satisfactorily, that he request
your office to cause the arrest of Mr. Eberhart and wire me over
your signature to that effect, whereupon I will at once file an in-
formation and place a warrant in the hands of the sheriff with
instructions to go to Yakima.

Will you please if Mr. Leighton desires have some one accom-
pany him when he goes to call upon Mr. Eberhart, and remain in
the neighborhood so that if it is necessary to arrest Eberhart there
will be no chance of his getting away.

If the suggestions herein made are deemed impracticable after
a conference with Mr. Leighton, will you please take any necessary
steps to accomplish the object herein intended.

                    Yours truly,

WB-MB                                        W. P. Brown.

It will be observed that this letter clearly indicates
that the writer was the prosecuting attorney of What-
com county, and it is not denied that Murphy knew
him to be such; that as such prosecutor he had made
so much of an investigation of the purported facts as
he deemed necessary and proper, and the statement is
made clearly and without qualification that, in the
opinion of the writer, Mr. Eberhart was guilty of the
crime of grand larceny.  Nothing thereafter contained
in the letter in any way tends to weaken or cast doubt
upon that statement, and even though, as contended,
Murphy may have gathered from the letter that the
prosecutor was more concerned with the collection of
something supposed to be due Leighton than with the
enforcement of the law, that was a matter which did
not concern him and he could know nothing of the
facts, if any there were, which might tend to justify
such a course.  In view of the sheriff's duty to execute
processes from any county of the state, the fact that

the prosecutor is the legal advisor of the sheriff of his county and must carry more than ordinary weight with the sheriff of any other county, and the unequivocal statement in the letter that, in the opinion of the prosecutor, Eberhart was guilty of the crime of grand larceny, reasonable minds may not differ in arriving at the conclusion that the sheriff had a real belief, and reasonable grounds for such belief, that Eberhart was guilty of grand larceny; and since all of the other evidence in the case upon this point tended to the same result and did not dispute it, to hold otherwise would be entirely inconsistent with a long line of cases involving malicious prosecutions, in which we have consistently held that an undisputed showing that the prosecuting witness had acted upon the advice of the prosecuting attorney, or other reputable counsel, after making a full and truthful statement of all the known facts, made it the duty of the court to find probable cause as a matter of law. *Simmons v. Gardner,* 46 Wash. 282, 89 Pac. 887, L. R. A. 1915D 16; *Hightower v. Union Savings & Trust Co.,* 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918A 489; *Main v. Healy,* 100 Wash. 253, 170 Pac. 570; *Borg v. Bringhurst,* 105 Wash. 521, 178 Pac. 450; *Bruce v. Elmergreen,* 106 Wash. 359, 180 Pac. 135; *Lester v. Millman,* 107 Wash. 300, 181 Pac. 878.

We conclude, therefore, that the trial court should have withdrawn the first cause of action from the jury on defendant's motion for nonsuit.

This disposition of the first cause of action makes it unnecessary to consider the action of the trial court in denying the motion for a continuance, because the evidence sought to be procured through such continuance related only to the first cause of action.

With reference to the second cause of action, we stand upon the ruling in *Riggs v. German,* 81 Wash.

128, 142 Pac. 479; but giving full force to the presumption that the sheriff has in all things performed his full official duty, that being a presumption only, may be rebutted; and when there is evidence tending to rebut that presumption, the question is one of fact for the jury. In this case there was such evidence:

(a)   Evidence of prior brutal treatment of a prisoner during Murphy's term of office, and known to him;

(b)   The rules of the "Kangaroo Court" as here disclosed provide in a number of instances for severe punishment without disclosing the nature of such punishment, and from such rules and other evidence in the case, the jury might draw the conclusion that the sheriff knew that "severely punished" meant the inflicting of physical punishment which might result in injuries; and

(c)   The fact that the sheriff's approval of the rules was typewritten, save only his signature and the clause withholding his approval of fines and punishments, which were written in with a pen, together with the testimony (denied, it is true) that the words intended to withhold his approval of the fines and punishment were not in the document at the time of the infliction of the injuries complained of, all tend to rebut the presumption that the sheriff performed his full duty in the premises, and present questions of fact which were properly submitted to the jury.

The jury returned a verdict for $2,500 upon this cause of action which the trial court reduced to $1,500, and it is contended that this amount is still excessive. Respondent was roughly seized, overborne and thrown into a bath tub filled with cold water. He testifies to nothing in the way of substantial injuries or subsequent suffering except such as might, and probably

did, result from chronic appendicitis from which he was then suffering. An operation disclosed the presence of appendicitis, and the need of an operation therefor, and his condition since the operation, as testified to by him, is reasonably attributable not to his involuntary bath, but to the chronic trouble and the means used to remove it. Under these conditions, we feel that the verdict was excessive, and that it should be reduced to a sum not exceeding $750. In all other respects, we agree with the majority opinion of the department.

Reversed and remanded for further proceedings not inconsistent with these views.

PARKER, FULLERTON, MOUNT, BRIDGES, and MACKINTOSH, JJ., concur.

HOLCOMB, C. J., (dissenting)—I concur in the decision of the majority upon the first cause of action, but dissent from that on the second cause of action. I agree, however, that if any recovery be allowed upon the second cause of action, it should be reduced, as has been done.