[No. 28544. Department Two. April 2, 1942.]

LOUIS KALKANES *et al., Appellants,* v. GEORGE
WILLESTOFT *et al., Respondents.*[1]

*Christ D. Lillions,* for appellants.

*W. J. Daly,* for respondents.

BLAKE, J.—This is an action for damages for false
arrest. The case was tried to the court. Findings and
conclusions were made, upon which judgment was
entered dismissing the action. Plaintiffs appeal.

The following facts are either admitted or uncon-
tradicted: Respondent Willestoft was chief of police
at Port Townsend. Appellant Louis Kalkanes, for
fourteen or fifteen months prior to January 9, 1940,
resided in Port Townsend and was employed as a
dishwasher at the Central Cafe, which was operated

[1]Reported in 124 P. (2d) 219.

by P. M. Chatos. In September, 1939, appellant had purchased, among other things, an overcoat on the installment plan from a merchant by the name of Mrs. Hill. On January 8, 1940, appellant was discharged by Chatos. Respondent, being informed of the fact, accosted appellant on the street and asked him when he was leaving town. Appellant told him he planned to leave "tomorrow or after a few days." The chief then said, "You go see Mrs. Hill you go leave your overcoat." The appellant called on Mrs. Hill the next day, but refused to turn the overcoat over to her. About nine o'clock that evening, respondent arrested appellant without a warrant and lodged him in jail. The ground for making the arrest was that appellant was wanted in Seattle on a felony charge.

The information upon which respondent acted was obtained from Chatos, who told respondent that appellant had jumped a bail bond and was wanted in Seattle—"Not by the authorities by the Bond Company." The circumstances under which this information was obtained and the deduction made that appellant was wanted in Seattle on a felony charge is illuminated by the following testimony of Chatos:

"MR. DALY: Pete tell the Court what you told the chief of police about Louis Kalkanes in Seattle. A. Yes, I told him well I told him because he told me that he could not arrest a man for nothing and I explained to him that he was wanted for some kind of a bonding company in Seattle that is what he told me."

Appellant was held in jail over night. The next morning, about nine o'clock, according to the chief's testimony,

". . . he was brought to the sheriff's office and questioned in regard to whether Kalos was his right name which he said it was. I asked him if he had been in trouble with the police in Seattle and he said no

and I asked him if he was a citizen of this country and he said yes and we asked him in regard to his account with Mrs. Hill and he produced a bunch of receipts and after examining the receipts we found that he had gotten this overcoat and had made payments on this overcoat and that she had received and accepted these payments. Then Mr. Brown called up the Seattle police department and inquired if he was wanted but that department said no but that they were well acquainted with someone by the name of 'Calos [Kalos].'

. . .

"After we received the report from Seattle that he wasn't wanted he was released immediately. He left the sheriff's office and walked out and as I came out in front he was standing outside and he asked me if I would take him down town and I said sure and he rode down with me and we stopped in front of Mrs. Hill's clothing store, he asked me to stop there and I stopped and he got out, the door was open and I could see in and he walked in and took the coat off and bundled the coat up and threw it on the counter and walked out. I asked him after what he had done with the coat and he said he put it on the counter and walked out and left it and that was all."

The judgment of the trial court is based on the theory that the information furnished by Chatos constituted probable cause for the arrest of appellant without a warrant.

■ To justify an officer in making an arrest without warrant for an offense not committed in his presence, he must have reasonable grounds to believe that a felony has been committed and that the person apprehended is the guilty party. A mere general suspicion is not sufficient to justify an arrest. "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." 4 Am. Jur. 33, § 48; *State v. Hughlett*, 124

Wash. 366, 214 Pac. 841; *State v. Vennir*, 159 Wash. 58, 291 Pac. 1098.  An officer

" . . . has no authority to arrest on the mere belief that a person has been guilty of an offense, if such belief has no foundation in fact or sufficient circumstances on which to rest, or if he unreasonably acts at the request of a third person who himself has a mere suspicion of the guilt of the one who is arrested."  4 Am. Jur. 32, § 48.

Upon the undisputed evidence, we think that there was "no foundation in fact or sufficient circumstances on which to rest" a belief that appellant had committed a felony in King county—or anywhere else. As we view the evidence, appellant was arrested not only without probable cause, but rather at the behest of one who should have been relegated to a civil remedy.

The judgment is reversed, and the cause remanded for retrial.

ROBINSON, C. J., SIMPSON, and JEFFERS, JJ., concur.

BEALS, J., dissents.