[No. 35891.   Department Two.   February 14, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK EUGENE KEATING, *Appellant*.*

*Henry Opendack*, for appellant.

*Charles O. Carroll, James E. Kennedy*, and *William F. West*, for respondent.

HAMILTON, J.—Defendant was convicted of the crime of maliciously damaging a building by explosion, a felony under RCW 70.74.280.[1]

Upon appeal, defendant assigns error to the reception

*Reported in 378 P. (2d) 703.

---

[1] "Every person who shall maliciously, by the explosion of gunpowder or any other explosive substance or material, destroy or damage any building, . . . shall be punished as follows:

"(1) If thereby the life or safety of a human being is endangered, by imprisonment in the state penitentiary for not more than twenty years.

"(2) In every other case by imprisonment in the state penitentiary for not more than five years." RCW 70.74.280.

in evidence of his confession and tape recorded admissions. Defendant contends, in his .brief and upon oral argument, that his arrest was unlawful for lack of probable cause, thereby rendering his subsequent admissions and confession inadmissible, as "fruits of the poisonous tree." He does not otherwise challenge the voluntariness of his confession and admissions.

Briefly, the salient facts are these: On July 21, 1960, at about 10:45 p.m., an explosion occurred outside the bedroom wall of a Mr. and Mrs. Fletcher. Considerable damage resulted, and the Fletchers, who had retired for the night, were endangered. Upon questioning by police, the Fletchers reported the defendant, a former brother-in-law of Mr. Fletcher, had a long-standing grudge against Mr. Fletcher because he believed Fletcher to be interested in his wife. The Fletchers described other occurrences about their property (tires slashed, sugar in the gas tank, and a house fire), which they suspected the defendant had perpetrated. They reported they had contacted the defendant's sister, Mr. Fletcher's former wife, who advised them that she knew the defendant had some dynamite, that she had warned him not to use it against Fletcher, and that she believed he was responsible for the explosion.

With this information, the police immediately placed the defendant's home under surveillance. At about 1:30 a.m., July 22, 1960, the defendant and his wife left their home in a taxi, at which time the police arrested them and took them first to a precinct station, then to police headquarters. Interrogation did not commence until arrival at the headquarter's office. Defendant's wife was released and later returned, purportedly at the defendant's request.

Prior to leaving home, the defendant had observed the police surveillance, and called an attorney. The attorney, and his two partners, met the defendant at police headquarters, conferred with him and, along with defendant's wife, were present at the time of the tape recorded admissions and defendant's confession.

Defendant was thereafter charged with the crime of which he stands convicted.

Immediately prior to trial, a hearing was held before the trial judge, under the provisions of Rule of Pleading, Practice and Procedure 101.20W, RCW Vol. 0, to determine the voluntariness of defendant's confession.

At this hearing, the defendant, represented by counsel other than counsel he first contacted, contended his initial counsel did not advise him of his right to remain silent, but, rather, urged him to be truthful and cooperate with the police; that he became distrustful of such counsel and requested other counsel; and that he confessed only because the police threatened to detain his wife and place his children in custody of others.

The state produced testimony to the effect that defendant's confession was voluntarily offered after he had conferred with his attorneys, and had been advised of his rights; that defendant indicated he wished his wife present before making a statement, whereupon his wife, who had been released and was on her way home, was returned; that a captain of police, another officer, defendant, his wife, and two of defendant's attorneys then went into the captain's office for the purpose of taking defendant's statement; that the conversation between the parties was recorded upon a tape recorder, along with the defendant's confession being reduced to writing. The tape recording and the written confession were introduced in evidence.

At the conclusion of the hearing, the trial court, upon the evidence presented, found defendant's admissions and confession to be voluntary. The jury subsequently empaneled to try the case, likewise, by special interrogatory, found defendant's admissions and confession voluntary.

The brief record before us, includes a narrative statement of the state's evidence, the testimony of defendant and his wife, and the exhibits, including the tape recording. A review thereof satisfies us that the trial court's finding of voluntariness is amply supported by the evidence.

Assuming, arguendo, defendant's arrest to be without probable cause, the basic question presented is whether, under the circumstances here revealed, a voluntary confession with accompanying admissions becomes, by virtue of

the unlawful arrest, inadmissible in evidence at a subsequent trial.

Defendant, relying upon *Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684 (1961), in effect, contends the United States Supreme Court has extended, and we should adopt, under the fourth, fifth, and fourteenth amendments of the United States Constitution, an exclusionary rule akin to the "McNabb rule"[2] (*McNabb v. United States*, 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943)) applicable to voluntary confessions obtained following an unlawful arrest.

■ We have heretofore rejected the *McNabb* rule. *State v. Winters*, 39 Wn. (2d) 545, 236 P. (2d) 1038; *State v. Self*, 59 Wn. (2d) 62, 366 P. (2d) 193. Cert. den. 370 U. S. 929, 8 L. Ed. (2d) 508, 82 S. Ct. 1569.

The United States Supreme Court, in *Culombe v. Connecticut*, 367 U. S. 568, 588, 6 L. Ed. (2d) 1037, 81 S. Ct. 1860 (1961), decided upon the same date as *Mapp v. Ohio*, *supra*, stated:

". . . Due process does not demand of the States, in their administration of the criminal law, standards of favor to the accused which our civilization, in its most sensitive expression, has never found it practical to adopt. The principle of the Indian Evidence Act which excludes all confessions made to the police or by persons while they are detained by the police has never been accepted in England or in this country. Nor has the principle of the Scottish cases barring the use in evidence of a defendant's incriminating responses to police questioning at any time after suspicion has focused on him. Rather, this Court (in cases coming here from the lower federal courts), the courts of England and of Canada, and the courts of all the States have agreed in holding permissible the receipt of confessions secured by the questioning of suspects in custody by crime-detection officials. And, in a long series of cases, this Court has held that the Fourteenth Amendment does not prohibit

---

[2] In federal courts, pursuant to federal procedural rules, confessions made during illegal detention due to failure promptly to take a prisoner before a committing magistrate are excluded, whether or not the confession is the result of coercion. See, also, *Upshaw v. United States*, 335 U. S. 410, 93 L. Ed. 100, 69 S. Ct. 170 (1948).

a State from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive. . . .

" . . .

" . . . although we adhere unreservedly to *McNabb* for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment. . . .

" . . .

" . . . The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond*, 365 U. S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

In the instant case, the record does not demonstrate, nor is it here affirmatively contended, that defendant was: held incommunicado for an extended period of time; questioned continuously and/or in relays; denied food or drink; critically deprived of his capacity for self-determination; or denied the presence and advice of counsel. Defendant's confession and admissions were found by the trial judge, in appropriate pre-trial proceedings, to be voluntary and not coercive.

Defendant's confession and admissions were properly admitted in evidence.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HUNTER, JJ., concur.

April 3, 1963. Petition for rehearing denied.