[No. 43491.  En Banc.  September 11, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN RAY BYERS et al, *Petitioners*.

*Michael C. Lipscomb, John C. Belcher,* and *Voris, Lipscomb & Belcher,* for petitioners.

*Jane A. Mason, Prosecuting Attorney,* and *David E. Rhea, Jr.,* and *William Gardiner, Deputies,* for respondent.

Hamilton, J.—The defendants were charged with the crime of burglary in the second degree. A pretrial motion to suppress certain evidence upon the basis of an alleged illegal arrest was heard and granted in part. Trial to the court sitting without a jury ensued, and defendants were found guilty as charged. Defendants appealed to the Court of Appeals, Division One. The convictions were affirmed by unpublished opinion. Defendants petitioned for review before this court. The petition was granted. *State v. Byers*, 84 Wn.2d 1014 (1974). We affirm the convictions.

The facts are undisputed. On April 17, 1972, at approximately 2:54 a.m., a Mr. Ellis, who resides near the Portage on Lummi Shore Road in a somewhat remote area of Whatcom County, Washington, advised the sheriff's office by telephone that he had just heard a rapping sound and the breaking of glass emanating from an unoccupied house in close proximity to his residence. He asked that the circumstances be investigated. The radio dispatcher in the sheriff's office radioed two deputies then separately patrolling in that area of Whatcom County, advised them of the Ellis report, and dispatched them to the scene. Their respective routes to the scene placed them on Lummi Shore Road traveling south. While so en route and at approximately 3:07 a.m., they were advised that Mr. Ellis had reported that a car with a noisy exhaust had left the scene traveling north on Lummi Shore Road.

At 3:09 a.m., the deputies intercepted and stopped an automobile proceeding north on the roadway approximately 3 miles from the Ellis residence. They requested identification of the driver, defendant Byers, and inspected the automobile. Inspection revealed the car was occupied by the defendants and two young girls, all under the age of 21, except defendant Mauler; that there were in plain sight on the front and back seats several bottles of varying kinds of wine and some beer; and that the vehicle had a loud exhaust and a defective rear license plate light. Upon inquiry, the deputies were advised by defendants that the

vehicle had shortly before run out of gas and that defendants had walked to the home of Byers' parents in the Portage for a can of gas.

The officers requested that the occupants of the car accompany them to the area of the Ellis residence. The defendants acceded to the request and the group arrived at the premises at about 3:17 a.m. Mr. Ellis identified the noisy exhaust on defendants' vehicle as the type of exhaust he had heard and recalled that the rear license plate light was not functioning. Inspection of the unoccupied residence revealed pry marks on a back door, a broken window upon which there was some blood, and an open kitchen cabinet. Visual observation indicated defendant Byers had a fresh cut on his hand. Defendants were then placed under arrest and advised of their constitutional rights, understanding of which they acknowledged.

At 4:22 a.m., a detective from the sheriff's office arrived and was briefed on the situation. Further examination of the automobile revealed a small shank screwdriver on the dashboard which had some blood on it and matched the pry marks on the rear door of the unoccupied residence. Defendants' vehicle was then impounded and the wine, beer, and screwdriver were secured as evidence. Thereafter, defendants were transported to the county jail and booked. They were again read their constitutional rights and signed a waiver of those rights. They each acknowledged a full understanding of their rights. Upon interrogation, each confessed to the burglary and signed a written version of their respective confessions.

Before trial, defendants moved to suppress the confessions and the physical evidence contending that all were the result of an illegal arrest. Upon conclusion of the motion to suppress hearing, the trial court determined that while the officers had probable cause to stop defendants' vehicle on Lummi Shore Road, they did not then have probable cause to arrest and that the physical evidence thereafter acquired was the fruit of an unlawful arrest and

inadmissible. The trial court further determined, however, that the confessions were freely and voluntarily given, and otherwise untainted by an illegal arrest, hence, admissible. On review, defendants contend the trial court erred with respect to the admissibility of the confessions asserting that they, too, were the fruit of the unlawful arrest.

The trial court characterized its determination that the officers had probable cause to stop defendants' vehicle, but lacked probable cause to then arrest defendants as "a finding of fact." Normally, on appellate review, great significance is attached to factual findings of a trial court; however, we find in this case two reasons for reviewing the so-called finding of fact. First, in those cases wherein fundamental constitutional rights are in issue, it is incumbent upon a reviewing court to make its own independent examination and evaluation of the facts. *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965). Second, in those instances where the facts are undisputed, a determination of the presence or absence of probable cause to stop or arrest becomes a question of law, the judicial determination of which becomes a conclusion of law reviewable on appeal. *Eberhart v. Murphy*, 113 Wash. 449, 194 P. 415 (1920); 5 Am. Jur. 2d *Arrest* § 49 (1962).

In the instant case, we agree with the trial court that there existed ample facts establishing probable cause for the officers to stop the defendants' vehicle at the time and place it was stopped. *Cf. State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974).

We cannot agree, however, with the trial court's conclusion that, lacking probable cause, an illegal arrest occurred at the time and place the officers requested the defendants to accompany them back to the scene of the suspected burglary.

Although one officer testified that, subjectively, he considered the defendants to be under arrest at the site of the stop, the record does not indicate that the defendants were then so advised. The officers, so far as the record reveals, simply directed or requested the defendants to ac-

company them some 3 miles south on Lummi Shore Road to the scene of a suspected burglary, to which request defendants acceded. In this respect, there is nothing ipso facto unconstitutional in a brief detention of citizens under circumstances not otherwise warranting or justifying arrest for purposes of limited inquiry in the course of a routine police investigation. The test of the validity of such brief detention is whether from the totality of the circumstances it appears that the detention was based upon reasonable grounds and was not arbitrary or harassing. *Gilbert v. United States,* 366 F.2d 923 (9th Cir. 1966), *cert. denied,* 388 U.S. 922, 18 L. Ed. 2d 1370, 87 S. Ct. 2123 (1967); *United States v. Brown,* 436 F.2d 702 (9th Cir. 1970); *Gaines v. Craven,* 448 F.2d 1236 (9th Cir. 1971; *United States v. Richards,* 500 F.2d 1025 (9th Cir. 1974).

The distinction between an arrest and an investigative field detention is one which admits of no simple definition. In *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968), different members of the Supreme Court were unable to agree whether an arrest or a simple detention had taken place. (*Compare, e.g.,* Mr. Chief Justice Warren's majority opinion *with* Mr. Justice Harlan's concurrence.) The question is not one of labels, but rather involves a balancing of the intrusion made on an individual's freedom against society's need to investigate crime. The more significant the intrusion, the more cause an officer must have in order for his actions to pass the test of reasonableness.

A determination of the reasonableness of an investigative detention must be made on a case-by-case basis, because facts of individual cases will differ in terms of the information available to officers and the scope of the actual detention. *See Terry v. Ohio,* 392 U.S. 1, 13, 20 L. Ed 2d 889, 88 S. Ct. 1868 (1968). This case is made more difficult by the fact that these officers, apparently alone in the area, felt it necessary both to detain the suspects and to immediately investigate the reported possible burglary. The transporting of the subjects to the scene was a precautionary measure,

but such does not in itself automatically make the detention unreasonable. In *United States v. Richards, supra,* officers investigating a failure to pay for an airport rental car became suspicious of smuggling activities when they discovered a plastic bag and a border parking lot receipt in the automobile, and learned that the airplane flown by the suspect was owned by a man suspected of smuggling narcotics and stolen guns. When appellant again landed his airplane at the same airfield, the officers placed the aircraft under surveillance. Appellant and a companion drove up to the plane and unloaded luggage and a rifle scabbard; then, after glancing around, they loaded a package wrapped in Christmas paper into the airplane. After parking their car, they went back to the plane and started its engine. Officers approached the plane, and one raised his badge and ordered appellant to shut off the engine and get down. When appellant hesitated, another officer moved in front of the plane, drew and pointed his gun, and ordered them to get out of the plane. The two men complied, whereupon one officer identified himself, told appellant he was suspected of smuggling, and began to question the two men on the airfield. Because wind conditions made communication difficult, the group moved inside the airport terminal building. Neither appellant nor his companion objected to moving inside. Appellant's answers were implausible and evasive, and the officers therefore further pursued their investigation, with a resulting delay of slightly over an hour.

Noting that "[p]recisely when in each case an arrest has occurred is a question of fact which depends on an evaluation of all the surrounding circumstances" (*United States v. Richards, supra* at 1028), the Ninth Circuit rejected appellant's argument that an arrest occurred at the time of the gunpoint confrontation, instead viewing the stop and interrogation as an investigative detention justified by the circumstances.

It is not contended here that the officers did not have sufficient reason to detain the occupants of the car. Here the officers were in the course of a routine investigation in

the early morning hours. They had been advised that a probable burglary of an unoccupied house had been detected while in progress, and that an automobile with a noisy exhaust had left the scene traveling north on their route of travel. They first sighted the approaching vehicle when it was approximately ½ mile from the area of the suspected burglary. At the time it was the only car traveling north on Lummi Shore Road. When they stopped the vehicle some 3 miles from the Ellis residence, they noted that it had a noisy exhaust and a defective rear license plate light. Upon inspection, they observed an unusual quantity of liquor in the car, and learned from the defendants that the vehicle had shortly before been parked on Lummi Shore Road. They further learned from the defendants that at least three of the occupants of the vehicle were under 21 years of age and from this knew that these occupants, at least, were not lawfully in possession of intoxicating liquor (RCW 66.44.270).

Under these circumstances the officers had reasonable grounds upon which to briefly detain the defendants, short of arrest, for further inquiry into their possible connection with the reported burglary. Indeed, it would be a strained and unrealistic rule of law which would compel them to permit the defendants to proceed on their way with the possible fruits of a burglary unlawfully in their possession.

Certainly, after the officers arrived on the scene of the suspected burglary and ascertained that a burglary had in fact been committed, that blood had been deposited on a broken window, that defendant Byers had a fresh cut on his hand, and that Mr. Ellis recognized the noisy exhaust of the defendants' vehicle, they had probable cause to arrest the defendants, which they then did. The later discovery of the screwdriver and its relationship to the pry marks on the rear door of the vacant house merely corroborated the probable cause for arrest.

The remaining question, then, is whether the scope of the detention was unreasonable. In *Richards*, the court felt that a detention for over an hour was reasonable under the

circumstances. In *Gray v. United States*, 394 F.2d 96 (9th Cir. 1967), a 5½-hour period of questioning of five suspects was held not to be an arrest, and statements made during that period were held admissible. The author of one law review article concludes that a 25- to 30-minute detention would be reasonable. Pilcher, *The Law and Practice of Field Interrogation*, 58 J. Crim. L.C. & P.S. 465 (1967). The ALI Model Code of Pre-arraignment Procedure § 110.2 (Official Draft No. 1, 1972) would permit a 20-minute detention. Here, the pre-arrest detention period was apparently not longer than 30 to 40 minutes; the detention was clearly for the purpose of investigating the explanation given police by the car's occupants. The fact that the officers found it necessary to ask these appellants to accompany them is not necessarily more of an intrusion under these facts than if the officers had merely detained them while other officers (assuming the availability of other officers in this remote location) investigated the purported burglary scene and then reported back. As in *Richards*, no objection was made to being moved.

The fact that an officer testified that defendants were not free to go does not convert the stop into an arrest. The subjective intent of the officers is irrelevant. *See* Cook, *Subjective Attitudes of Arrestee and Arrestor as Affecting Occurrence of Arrest*, 19 U. Kan. L. Rev. 173 (1971). An officer cannot testify that a citizen was not arrested, but merely detained, and thereby defeat the contrary reasoning of a reviewing court; similarly here, the statement of the officer does not conclusively characterize his action as an "arrest." In most stop-and-frisk situations, the citizen is not "free to go." *Terry v. Ohio, supra.* Had the officer in fact had the specific intention of charging these individuals with a crime, he would have behaved quite differently, transporting them to the station for booking rather than proceeding to investigate.

We conclude, therefore, that neither the preliminary investigatory detention nor the subsequent arrest was unlawful. From this, it follows that the confessions were not the

fruit of an illegal arrest and were properly admitted into evidence. Likewise, the physical evidence, *i.e.*, the liquor, screwdriver, and related evidence, should have been admitted. The exclusionary rule was not designed to preclude the products of legitimate police investigative work.

The convictions are affirmed.

FINLEY, HUNTER, and WRIGHT, JJ., concur.

REVELLE, J. Pro Tem., concurs in the result.

UTTER, J. (dissenting)—The majority's judgment rests on its determination, devoid of support in the record, that the appellants were not placed under arrest where they were stopped, but were "simply directed or requested . . . to accompany [the officers ] . . . 3 miles south . . . to which request [they] acceded." To draw this conclusion the majority must review the record de novo, overturn a finding of fact made by the trial court and never challenged by the State, and ignore the only testimony there was on the subject of the arrest, that of the arresting officer. Its unprecedented refusal to defer to the trial court's findings in order to justify a restriction of constitutional privileges is explained through citation of a doctrine designed to insure those privileges against abuse. Its reliance on a reassessment of the facts in this manner obscures the central issues raised by this appeal. I thus cannot join either in the approach the majority takes to this case or the result it reaches.

The court that tried appellants found, as a matter of fact, that they "were arrested on Lummi Shore Drive . . ." This finding, drawn from an assessment of live testimony we have not heard and undisputed by the parties at all stages of this litigation, should be upheld if based on substantial evidence. *Boise Cascade Corp. v. Pierce County*, 84 Wn.2d 667, 529 P.2d 9 (1974); *State v. Smith*, 84 Wn.2d 498, 527 P.2d 674 (1974); *State v. Chapman*, 84 Wn.2d 373, 526 P.2d 64 (1974); *House v. Erwin*, 83 Wn.2d 898, 524 P.2d 911 (1974).

The majority's statement that the facts here should be reviewed de novo because constitutional rights are at stake turns the rule of *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963) on its head. Appellate courts' careful scrutiny of the record in constitutional cases is necessary to insure "that constitutional privileges have not been abused" (*State v. Hoffman,* 64 Wn.2d 445, 451, 392 P.2d 237 (1964)), not to guard against the unwarranted protection of them. But even if an extraordinary standard of appellate review were appropriate here, the majority's reversal of the trial court would be incorrect, for *all* of the evidence in the record supports the conclusion that the appellants were arrested when and where they were stopped.

Sergeant Franklin, the arresting officer and the only witness who testified on the subject of the arrest, acknowledged that he "told" the defendants to come with him to the scene of the suspected burglary. He said that "[t]hey were brought back," that he "returned them to the scene." When pressed by defense counsel for more detail, he made clear exactly what appellants' situation was when they were told to follow him:

Q. Now, at the time you stopped Mr. Byers, he was not free to say, "Thank you, Sergeant Franklin" and leave, was he? A. No. Q. He was under arrest at that time? A. Yes.

I am completely baffled by the majority's statement that the "record reveals" that the appellants were given a "request" to accompany the officers and "acceded" to that request. The above-quoted testimony constitutes everything in the record of this case which in any way describes the circumstances under which appellants were returned to the scene of the burglary. There is no hint in it that anything short of a full-fledged arrest accounts for their failure to continue on their way after being questioned by the officers. Nor can I understand the characterization of Sergeant Franklin's statement as an expression of what he "subjectively considered" the situation to be. The sergeant

said appellants were not free to go; presumably he meant that he would have stopped them, by force if necessary, if they had tried. This was a statement of fact, not opinion, as is underscored by the fact that at the time Deputy Eherenfieldt had his car pulled in front of appellants "so they could not leave."

There is no basis on which calling the events here anything other than an arrest can be justified. Certainly the appellants' status was not altered by the fact that they did not test the officers' resolve by attempting to escape and being subdued.

> A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physcial force alone, or by threat of force, or by conduct reasonably implying that force will be used.

*Kilcup v. McManus*, 64 Wn.2d 771, 777, 394 P.2d 375 (1964). Nor does the fact that appellants were not formally "advised" that they were under arrest change what their circumstance was and what they knew it to be. *Henry v. United States*, 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959); *United States v. Strickler*, 490 F.2d 378 (9th Cir. 1974); *Jackson v. United States*, 408 F.2d 1165, 1169 (8th Cir. 1969); *State v. Sullivan*, 65 Wn.2d 47, 395 P.2d 745 (1964); *Seattle v. Sage*, 11 Wn. App. 481, 523 P.2d 942 (1974). Even if it were shown that Sergeant Franklin's statements to appellants were couched in terms amounting to a "request," the coercion implicit in the situation appellants confronted would compel us to hold they were arrested. *See United States v. Guana-Sanchez*, 484 F.2d 590 (7th Cir. 1973) (defendant "invited" to follow officers' car in his); *United States v. Jones*, 352 F. Supp. 369 (S.D. Ga. 1972), *aff'd*, 481 F.2d 1402 (5th Cir. 1973) (defendant "asked" to get in police car); *Commonwealth v. Richards*, ............ Pa. ............, 327 A.2d 63 (1974) (defendant "asked" to go to police headquarters).

Under any established test, appellants were under arrest from the moment they were not, and knew they were not, free to go. *United States v. See*, 505 F.2d 845, 855 (9th Cir. 1974). "When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." *Henry v. United States*, *supra* at 103. When they went further and forced the defendants and their companions to drive 3 miles and wait there while the reported incident was investigated, the fact of arrest was placed beyond question. *United States v. Selby*, 407 F.2d 241 (9th Cir. 1969); *cf. Plazola v. United States*, 291 F.2d 56, 60 (9th Cir. 1961):

> [T]here can be no doubt that when a car is stopped, the occupant required to get out, then required to leave his vehicle to get into an officer's car and be transported to another spot located two miles away . . . being required to await a search of another's vehicle . . . his liberty of movement has been sufficiently restricted to constitute an arrest.

The constitutional significance of appellants' arrest cannot be altered by relabeling it an "investigative detention."

> "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' "

*Cupp v. Murphy*, 412 U.S. 291, 294, 36 L. Ed. 2d 900, 93 S. Ct. 2000 (1973), quoting *Davis v. Mississippi*, 394 U.S. 721, 726-27, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969). The rule of *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972) and *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), that momentary "stops" can be made without full probable cause, simply has no application in the situation presented here. The cases cited by the majority provide no basis for extending the limited holding of *Terry* to a full-scale and prolonged seizure such as appellants were subjected to in this case. Three of them involved stops which, like those in *Terry* and *Adams*, lasted no more than a few moments. *See Gaines v. Craven*, 448 F.2d 1236

(9th Cir. 1971) and *People v. Gaines*, 265 Cal. App. 2d 642, 644, 71 Cal. Rptr. 468 (1st Dist. 1968); *United States v. Brown*, 436 F.2d 702, 703-04 (9th Cir. 1970); *Gilbert v. United States*, 366 F.2d 923, 928 (9th Cir. 1966). The fourth, *United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974), upheld a stop which lasted almost as long as that in the case at bar, but which was found justified—by a divided court—only because of the time needed to investigate the evasive and implausible answers the arrestees gave to police questions. Many other cases which did not involve such special circumstances and thus more closely resemble this one, have held that detention of such scope and duration amounts to arrest and thus cannot be permitted absent full preexisting probable cause. *See, e.g., Henry v. United States, supra* (stop of car on street restricting freedom to leave—*held*, arrest); *United States v. McDevitt*, 508 F.2d 8 (10th Cir. 1974) (defendant "requested" to get in police car and not told he was free to go for 20 minutes—*held*, arrested); *United States v. Johnson*, 495 F.2d 378 (4th Cir.), *cert. denied*, 419 U.S. 860 (1974) (defendants "escorted" by agents to room for questioning—*held*, arrested); *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), *cert. denied*, 419 U.S. 942 (1974) (defendant moved 50 yards by policeman who testified he was not free to leave—*held*, arrested); *United States v. Guana-Sanchez, supra* (defendant "invited" to follow police car to station—*held*, arrested); *In re Winkle*, 372 Mich. 292, 125 N.W.2d 875 (1964), *cert. denied*, 379 U.S. 645 (1965) (car stopped by two police cars with sirens and lights going—*held*, arrest); *State v. Sullivan*, 65 Wn.2d 47, 395 P.2d 745 (1964) (car stopped by policeman who testified he intended to arrest occupant—*held*, arrest).[1]

---

[1]*See also United States v. See*, 505 F.2d 845 (9th Cir. 1974) (defendants told not to leave, to move 200 yards to sheriff's office—*held*, arrested); *Jackson v. United States*, 408 F.2d 1165 (8th Cir. 1969) (defendant confronted, told to stop when he tried to move—*held*, arrested); *United States v. Selby*, 407 F.2d 241 (9th Cir. 1969) (defendants escorted by police to border to "sign some papers"—*held*, arrested); *Moran v. United States*, 404 F.2d 663 (10th Cir. 1968) (defend-

I thus find it impossible to escape the conclusion that appellants were "arrested" in the constitutional sense. The lawfulness of their arrest and the admissibility of its fruits therefore turns on the question that is central to the legality of any arrest: whether there was probable cause to justify it at the time it occurred. Probable cause to arrest for a crime, like this one, committed outside the presence of the arresting officer,[2] requires a reasonable belief that the

---

ant approached, told not to move—*held*, arrested); *United States v. Williams*, 351 F.2d 475 (6th Cir. 1965) (defendant "asked . . . to accompany [officers] to bathroom"—*held*, arrested); *United States v. Boston*, 330 F.2d 937 (2d Cir.), *cert. denied*, 377 U.S. 1004 (1964) (police approached defendant, showed badges, asked him to disclose contents of box—*held*, arrested); *United States v. Jones*, 352 F. Supp. 369 (S.D. Ga. 1972), *aff'd*, 481 F.2d 1402 (5th Cir. 1973) (defendant "asked" to get into police car—*held*, arrested); *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974) (car stopped on street, not free to leave —*held*, arrest); *Strong v. State*, 231 Ga. 514, 202 S.E.2d 428 (1973) (defendant moved from scene of accident by policeman—*held*, arrested); *State v. Delmondo*, 54 Hawaii 552, 512 P.2d 551 (1973) (defendant moved across room, made to stand by wall—*held*, arrested); *Commonwealth v. Richards*, ........ Pa. ........ , 327 A.2d 63 (1974) (defendant "asked" to go with police to station—*held*, arrested); *Hardinge v. State*, 500 S.W.2d 870 (Tex. Crim. App. 1973) (defendant told he could not leave police car, though he was not under arrest—*held*, arrested).

[2]The majority seems to suggest that the arrest of appellants and their companions might be validated because three of them were underage and there was liquor in their vehicle. Understandably, it does **not rely on this proposition**, however. Neither of the arresting officers ever claimed that they acted on the basis of a suspected violation of the Alcoholic Beverages Control Act. Sergeant Franklin stated clearly that he "felt that a burglary had occurred and that possibly one or all of the subjects in the vehicle were involved and *that is why* I returned them to the scene." (Italics mine.) An arrest is valid only if the arresting officer actually believes there are grounds for it, and if he has a reasonable basis for that belief. *Reese v. Seattle*, 81 Wn.2d 374, 381, 503 P.2d 64 (1972); *State v. Todd*, 78 Wn.2d 362, 365, 474 P.2d 542 (1970); *State v. Hughlett*, 124 Wash. 366, 368, 214 P. 841 (1923). The arresting officers here did not claim that they believed that an alcohol-related misdemeanor was being committed in their presence, and this court cannot simply ascribe that belief to them. Further, the record here does not unequivocally indicate that reasonable grounds existed to support such a belief. The record is unclear as to when the fact that at least one of the bottles of liquor was open became known to the officers, and it does not show whether the liquor was in the actual or

person arrested has committed an offense. RCW 10.31.100; *Giordenello v. United States*, 357 U.S. 480, 485, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958); *Cerny v. Smith*, 84 Wn.2d 59, 524 P.2d 230 (1974); *Kilcup v. McManus*, 64 Wn.2d 771, 777, 394 P.2d 375 (1964). That is, the arresting officer must have reason to believe two things: that an offense has been committed (*Beck v. Ohio*, 379 U.S. 89, 96, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); *Kalkanes v. Willestoft*, 13 Wn.2d 127, 124 P.2d 219 (1942)), and that the person to be arrested is the person who committed it (*Hill v. California*, 401 U.S. 797, 28 L. Ed. 2d 484, 91 S. Ct. 1106 (1971); *Whiteley v. Warden*, 401 U.S. 560, 568, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971); *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970)). To hold the arrest of the appellants lawful, then, it would be necessary that Sergeant Franklin and Deputy Eherenfieldt had reasonable grounds, when they ordered appellants to return with them to the scene of the burglary, to believe that a felony or serious misdemeanor had been committed there and that appellants had committed it. The record does not show that the two officers had sufficient reason to believe either of these things.

The few bits of information available when they arrested the appellants fell far short of giving the officers adequate cause to believe a felony had been committed. Deputy Eherenfieldt admitted this in his testimony: when asked whether he had, at that time, "any evidence that a break-in had actually occurred," he said "not to my knowledge." Sergeant Franklin, on the other hand, testified he was "sure that a burglary had occurred." The foundation of his certainty, however, does not appear in the record. The sergeant knew only what the deputy knew: that an unknown caller had reported hearing the sound of breaking glass at an unoccupied house and seeing a person nearby and an automobile leave the scene. This knowledge hardly forced the conclusion that a burglary had taken place. Without

constructive possession of any of the minor passengers in the vehicle, rather than simply in close proximity to them. *Cf. State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969).

knowing who the caller was, without an opportunity to inquire as to exactly what he heard and saw, any fixed belief that Sergeant Franklin had that there had been a burglary or criminal break-in, was something less than reasonable. *Cf. State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975).

Even less strong were the indications the officers had that, if a crime had been committed, appellants and their companions had committed it. All that they knew was that a car had been reported leaving the scene of the suspected crime,[3] on the same road and in the same direction that, 3 miles away, appellants' car was later seen traveling. This may well, as the trial court held, have justified stopping appellants' car; but it fell far short of providing an adequate basis for an arrest. The investigation and questioning of the car's occupants at the scene of the stop provided nothing to augment the grounds for suspecting they had been involved in a burglary. Sergeant Franklin testified that the presence of liquor added to his suspicions, but at that time neither he nor anyone else knew that liquor had been taken in the break-in. Indeed, as the trial court noted, the presence in the car of some liquor and two young couples should have, if anything, allayed any suspicion that arose from its being on the road so late at night.

The record in this case compels me to agree with the trial court that the arrest here was unfounded and illegal. The answers to remaining questions on this appeal, those primarily dealt with in both the State's and the appellants'

---

[3]The evidence is conflicting on whether, as the majority claims, the officers were informed that the car leaving the scene of the reported incident had a loud exhaust, before they arrested appellants. Sergeant Franklin testified that they were so informed, but Deputy Eherenfieldt said he believed they were not. The police dispatcher agreed with Sergeant Franklin's claim, but Mr. Ellis, the person who reported the incident to the dispatcher, said that he did not mention the loud exhaust when he called. Sergeant Franklin's recollection is subject to some doubt, too, as he misremembered that he had also been told that the departing vehicle had no license plate light, though both the dispatcher and Mr. Ellis said that no such information had been conveyed to him.

arguments, follow hard upon this conclusion, as the confessions did upon the arrest. The physical evidence seized from appellants linking them with the burglary and the statements they made confessing it, the only bases on which their convictions could stand, were obtained only as a result of their arrest. By any existing rule of law, both the evidence and the confessions were therefore infected with its illegality and should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965). The trial court so ruled as to the physical evidence, but not as to their confessions, which it held untainted because "voluntary."

In focusing on the "voluntariness" of appellants' confessions, the trial court misconceived the issue before it. Voluntariness is a test of the admissibility of a confession under the common-law prohibition of compulsory self-incrimination. *State v. McCullum*, 18 Wash. 394, 51 P. 1044 (1897); 3 J. Wigmore, *Evidence* § 826 (Chadbourne rev. 1970). Its federal constitutional relevance is to the Fifth and Fourteenth Amendments. *See, e.g., Culombe v. Connecticut*, 367 U.S. 568, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961); *Bram v. United States*, 168 U.S. 532, 42 L. Ed. 568, 18 S. Ct. 183 (1897). It does not affect the issue here, the *Fourth* Amendment question of whether a confession is a "fruit of the poisonous tree" rooted in an arrest made without probable cause. *Wong Sun v. United States, supra* at 488.[4] Whether or not they were "voluntary," appellants'

---

[4]In *State v. Carpenter*, 63 Wn.2d 577, 388 P.2d 537 (1964) and *State v. Keating*, 61 Wn.2d 452, 378 P.2d 703 (1963), this court upheld convictions based on confessions which immediately followed illegal arrests on the grounds that they were "voluntary." Though *Carpenter* and *Keating* postdated *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), unaccountably neither decision cited or mentioned it or in any way justified their clear departure from the controlling federal rule. *See* Note, 39 Wash. L. Rev. 185, 190 n.24 (1964). Perhaps the inconsistency stemmed from lingering confusion over the extent to which federal Fourth Amendment law had been extended to the states by *Ker v. California*, 374 U.S. 23, 33, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). But whatever the reason for this oversight

confessions were clearly born of their arrest, and therefore must fall with it.

The basic link between the appellants' arrest and their confessions inheres in the simple fact that, but for the one the other could not have been obtained. The very presence of appellants in police custody to make their statements was made possible only through the device of illegally arresting them. Under such circumstances, the Fourth Amendment forbids that their confessions be admitted. *Wong Sun v. United States, supra* at 485; *Hale v. Henderson*, 485 F.2d 266 (6th Cir. 1973), *cert. denied*, 415 U.S. 930 (1974); *United States v. Burhannon*, 388 F.2d 961 (7th Cir. 1968); *Collins v. Beto*, 348 F.2d 823 (5th Cir. 1965). If an arrest is illegal, a confession following it is admissible only if obtained " '. . . by means sufficiently distinguishable to be purged of the primary taint' " rather than " '. . . by the exploitation of that illegality' " (*Wong Sun v. United States, supra* at 488), such as when a significant intervening event[5] or a considerable lapse of time[6] sepa-

there can be no doubt now that the holding of *Wong Sun*, like other Fourth Amendment decisional law, applies to state action to the same extent it does federal. *Johnson v. Louisiana*, 406 U.S. 356, 365, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972); *Traub v. Connecticut*, 374 U.S. 493, 10 L. Ed. 2d 1048, 83 S. Ct. 1899 (1963); *State v. Traub*, 151 Conn. 246, 248, 196 A.2d 755 (1963). We are therefore bound to follow it here.

[5] *See, e.g., Wong Sun v. United States, supra* at 491 (defendant released on own recognizance between arrest and confession); *United States v. Owen*, 492 F.2d 1100 (5th Cir. 1974) (defendant released on bail, returned voluntarily to give statement); *Commonwealth ex rel. Craig v. Maroney*, 348 F.2d 22 (3d Cir. 1965) (defendant spoke with attorney before confession); *State v. Vangen*, 72 Wn.2d 548, 433 P.2d 691 (1967) (defendant confronted with legally seized evidence against him after refusing to confess); *cf. Johnson v. Louisiana*, 406 U.S. 356, 365, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972) (defendant arraigned between arrest and lineup).

[6] *See, e.g., Wong Sun v. United States, supra* at 491 ("several days"); *United States v. Owen, supra* (4 days); *United States v. Cassity*, 471 F.2d 317 (6th Cir. 1972) (26 days); *State v. Traub*, 151 Conn. 246, 196 A.2d 755 (1963) (3 days); *State v. Vangen*, 72 Wn.2d 548, 433 P.2d 691 (1967) (24 hours); *but see Hale v. Henderson*, 485 F.2d 266 (6th Cir. 1973), *cert. denied*, 415 U.S. 930 (1974) (42-hour interval, confession suppressed); *Collins v. Beto*, 348 F.2d 823 (5th Cir. 1965) (36-hour interval, confession suppressed).

rates the two. *Wong Sun v. United States, supra* at 485-91; *United States v. Owen,* 492 F.2d 1100, 1107 (5th Cir. 1974); *United States ex rel. Gockley v. Myers,* 450 F.2d 232, 236 (3d Cir. 1971), *cert. denied,* 404 U.S. 1063 (1972). Here, however, the causal chain is short and unbroken. There was no great lapse of time or noteworthy intervening event between the seizure and the statements, but only a short, continuous period of investigation and interrogation. There can thus be no basis for segregating the two, no justification for upholding the one while denouncing the other.

The second medium through which appellants' confessions were linked to and infected by their illegal arrest was their knowledge of the evidence against them seized incident to it. The appellants testified that they confessed because they "thought we were had" since "[t]he evidence was there." They confessed after watching the police gather evidence against them for almost 2 hours, and immediately upon being told that their female companions had made statements to the police.[7] The State has offered no alternative explanation for their action and has not met its burden of proving that the confessions were *not* produced by confronting appellants with the illegally seized evidence. *United States v. Falley,* 489 F.2d 33, 41 (2d Cir. 1973); *People v. Johnson,* 70 Cal. 2d 541, 555, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied,* 395 U.S. 969 (1969). The illegality of the seizure of this evidence, which must be taken to have in turn produced appellants' confessions, would therefore preclude their admission even if the illegality of the arrest which preceded them did not.[8]

---

[7]The young women's statements did not, in fact, implicate appellants, but the interrogating officers apparently suggested to them that they did. The statements were, like the physical evidence taken from the car, evidence against appellants seized in violation of their Fourth Amendment rights and inadmissible against them. *United States v. Beasley,* 485 F.2d 60, 64 (10th Cir. 1973), *cert. denied,* 416 U.S. 941 (1974) (dictum); *United States v. Guana-Sanchez,* 484 F.2d 590 (7th Cir. 1973); *United States v. Mallides,* 473 F.2d 859 (9th Cir. 1973).

[8]Like the question of the taint running from the arrest to the confessions following therefrom, the impact of the confrontation of the

Through either of two channels, then, the seized evidence or the very presence of appellants, the illegality of appellants' arrests tainted their subsequent confessions. The majority does not deny that the taint extends so far, the sole argument by which the State and the courts below have sought to justify admission of the confessions. Instead it attempts to deny that the taint exists at all, by claiming that the arrests never took place. Clearly they did, and appellants' confessions followed from them. The statements therefore should have been excluded and the convictions should be reversed.

The majority would have it that such a holding would declare unlawful a model of proper police behavior, and make the conduct of criminal investigations unduly difficult if not impossible. But this arrest and holding of four persons, two of them innocent, on the simple basis of their presence on a public highway, reportedly the route taken by possible burglars, hardly amounts to ideal police work. Here this precipitant action was no more necessary than it was proper. Having justifiably stopped appellants' car, taken their identification and ascertained their local residence, the officers were possessed of a lead which almost certainly would have enabled them to trace the burglary to them without prematurely taking them into custody. Allowing appellants to return home—after noting their presence and the visible fact of the liquor they had in the car—would hardly have jeopardized the case against them, as illegally arresting them did. Later—when it was ascertained that a burglary had, in fact, occurred, that appellants' car was the only one on the road, and that liquor was what was taken in the burglary—the occupants of the car could have been contacted and confronted with virtually

appellants with illegally seized evidence is not affected by the "voluntariness" of their decision to confess. *United States v. Basurto*, 497 F.2d 781, 790-91 (9th Cir. 1974); *McCloud v. Bounds*, 474 F.2d 968, 970 (4th Cir. 1973); *People v. Johnson*, 70 Cal. 2d 541, 552, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied*, 395 U.S. 969 (1969); *McNear v. Rhay*, 65 Wn.2d 530, 535, 398 P.2d 732 (1965).

the same damning evidence and information against them that was used here, without the taint of illegality.

I thus find no escape from the conclusion, applying established law to undisputed facts, that the arrest of appellants was improper and illegal, and that consequently the admission of their confessions violated the Fourth Amendment. Relabeling of the events or rebalancing of the interests involved cannot change that fact. Their convictions should therefore be reversed. I dissent.

STAFFORD, C.J., and ROSELLINI and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing granted January 21, 1976.