**UNITED STATES of America,**
**Appellee,**

v.

**Ted Lewis JOHNSON, Jr.,**
**Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Marvin Thomas LESTER,**
**Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**John Edward LEE,**
**Appellant.**

Nos. 73–1308 to 73–1310.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1973.

Decided April 5, 1974.

Fred Warren Bennett, Washington, D. C. (Court-appointed counsel), for appellants.

Oscar W. Bannister, Jr., Asst. U. S. Atty. (John K. Grisso, U. S. Atty., on brief), for appellee.

Before WINTER, FIELD and WIDENER, Circuit Judges.

FIELD, Circuit Judge:

Ted Lewis Johnson, Jr., Marvin Thomas Lester and John Edward Lee appeal from their convictions for armed bank robbery. 18 U.S.C. § 2113(d).

At about 9:00 a. m. on September 22, 1972, four individuals wearing green jump suits and ski masks and carrying pillow cases robbed the Lewis Plaza Branch of the South Carolina National Bank in Greenville, South Carolina, of $15,904. The robbers fled from the bank in a 1967 Plymouth automobile which they abandoned about one-half mile from the bank and transferred to another getaway car. A short time later a man and a woman companion left the second car at a rental lot at the Greenville airport and boarded a flight for Atlanta.

FBI agents investigating the robbery quickly found the abandoned Plymouth and witnesses put them on the trail of the second car, a red Toyota. Phillip N. Enlow, Assistant Special Agent in charge of the Columbia, South Carolina, FBI office recalled a similar robbery in the Charlotte, North Carolina, area where the robbers, including a woman, effected an escape by a flight from Charlotte to Atlanta. At Enlow's direction, the FBI agents went to the Greenville airport where they found the Toyota which contained a ski mask and green coveralls. The agents also discovered in a trash can near the Toyota a white pillow case stamped with a Golden Eagle Motel mark with a bank teller's tabulation on the inside. Upon inquiry at the motel, the agents learned that five reservations for an Atlanta flight had been made that morning in the names of Mr. and Mrs. B. Kelly, R. P. Deskin, W. Bell and J. Hart. The agents also obtained descriptions of the male and female occupants of the Toyota from employees of the car rental agency and the airline. The woman was described as wearing a white uniform with a white hat and carrying a large handbag, while the man wore white pants and a white shirt. All of this information was relayed to the Atlanta FBI office by Enlow who offered the opinion that based upon the modus operandi of the Charlotte robbery the woman would be carrying the money. The Atlanta FBI office ordered the plane to circle the airport until agents could be dispatched to the terminal.

The FBI agents met the couple traveling as Mr. and Mrs. B. Kelly about 10:50 a. m. as they deplaned and escorted them to a room at the airport for questioning. Kelly told the agents that his name was James Leroy Green, while Mrs. Kelly maintained that she was Velma Kelly but offered no identification to that effect. During the questioning Mrs. Kelly's handbag was taken from her by the agents. The agents then took the couple to the FBI field office in Atlanta where they were interrogated in separate rooms. During the course of questioning Mrs. Kelly about her identification she indicated that she had identification in her handbag. Thereupon, an agent opened the handbag which disclosed a white pillow case containing a large amount of money and at the bottom of the handbag were identification cards which disclosed that Mrs. B. Kelly was in fact Eldrena Stewart. Upon further questioning Miss Stewart took from her undergarments approximately $2200 contained in wrappers bearing the inscription "South Carolina National Bank." The agent determined that the money taken from Stewart included "bait money" from the Greenville bank and also learned that the true identification of Kelly was Ted Lewis Johnson, Jr. Shortly thereafter, formal arrest warrants for Stewart and Johnson were procured.

Johnson was charged in a three count indictment with (1) bank robbery (18 U.S.C. § 2113(a)), (2) armed bank robbery (18 U.S.C. § 2113(d)), and (3) possession of stolen money (18 U.S.C. § 2113(c)). Stewart was charged in counts one and three and Lester and Lee in counts one and two. Stewart entered a guilty plea to possession of stolen money and count one was dismissed as to her. A jury found the appellants guilty of armed robbery, and they were sentenced to the custody of the attorney general for twenty years. All other counts were dismissed.

## I.

The primary point on Johnson's appeal is his contention that the money taken from Stewart's handbag was the product of an illegal search and its use as evidence in the trial violated his Fourth Amendment rights. The district court conducted a suppression hearing and concluded that the agents had probable cause to arrest Johnson and Stewart at the Atlanta airport and that an arrest did, in fact, take place at that time. Accordingly, the district judge upheld the validity of the search on the ground that it was incident to a lawful arrest.

We agree with the district court. The Atlanta agents had the authority to make the arrest under 18 U.S.C. § 3052, and when they took Johnson and Stewart into custody at the airport and restricted their liberty of movement the arrest was complete. Sibron v. New York, 392 U.S. 40, 67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). "No formal words are required, nor is a declaration necessary at the time of arrest." Moran v. United States, 404 F.2d 663, 666 (10 Cir. 1968); United States v. Baxter, 361 F.2d 116 (6 Cir. 1966). Whether the arrest at the airport was constitutionally valid depends, of course, on whether "the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Stewart] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L. Ed.2d 142 (1964). *See* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 70 S.Ct. 31, 94 L. Ed. 513 (1949). The record provides ample support for the finding of the district judge that the Atlanta agents had probable cause and reasonable grounds to believe that both Stewart and Johnson had committed an offense and that, accordingly, the arrest was constitutionally valid.

Aside from his challenge of the arrest, Johnson contends that the search of Stewart's handbag was unjustified since it was no longer within her "immediate control" as required by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We find this argument unpersuasive. When the investigative questioning focused on the handbag and required that it be opened to verify Stewart's identification it lost its innocuous character and became a legitimate subject of the officers' search. Assuredly this was not an unreasonable act on the part of the officers. To permit Stewart, a suspected participant in an armed bank robbery, to open the handbag would have been, to say the least, indiscreet. The answer to Johnson's argument is found in *Chimel* itself:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. * * * And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 762, 763, 89 S.Ct. at 2040.

Finally, Johnson urges that since the handbag was not searched at the time Stewart was taken into custody or shortly thereafter, it was not "substantially contemporaneous" with her arrest and was unreasonably remote under the

principle of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963). We find no suggestion in *Preston* that the term "contemporaneous" contemplates immediacy; that case merely held that "[o]nce an accused is under arrest and in custody, then a search made at another place without a warrant is simply not incident to the arrest." 376 U.S. at 367, 84 S.Ct. at 883. That is a far cry from the present case where Stewart was undergoing custodial questioning with the handbag close at hand in the same room.[1]

Since the search of Stewart's handbag was constitutionally permissible, the evidence was properly admitted at Johnson's trial.[1a]

## II.

Appellant Marvin Thomas Lester contends that a confession given by him to an FBI agent was coerced and that the district court employed an incorrect standard of proof in making the determination that the confession was voluntary.

Briefly stated, the facts bearing upon Lester's claim are as follows: After his arrest on the bank robbery charges Lester was placed in the Fulton County, Georgia, jail and on October 2, 1972, his wife visited him at the jail. Lester instructed her to arrange bail for Claude Franklin, a cell mate who was being held on shoplifting charges, and pursuant to these instructions Mrs. Lester engaged a person to post the bond. Thereafter, when Franklin's name was called for release Lester responded. However, when the officials checked the fingerprint card which had been made at the time of Franklin's arrest they discovered Lester's ruse and, of course, returned him to his cell. In investigating the attempted escape the officials found Mrs. Lester in an automobile near the jail and took her into custody. The following morning an FBI agent came to Lester's cell to interview him relative to escape and at that time Lester stated that his wife was innocent of complicity and if the agent would assure him that she would not be prosecuted he would "lay it all out about the bank robbery." The agent responded that the prosecution of Mrs. Lester rested solely within the discretion of the United States Attorney but that he would advise him of Lester's cooperation. Thereafter, Lester signed the waiver card and made the confession regarding the robbery. No charges were filed against anyone with respect to the abortive escape. Lester urges, however, that the confession was coerced by the hostage posture of his wife.

■ The district court conducted an extensive suppression hearing with respect to the confession and held that it had been freely and voluntarily made within the meaning of 18 U.S.C. § 3501. In considering the issue of voluntariness the court ruled that the Government was not required to prove voluntariness beyond a reasonable doubt, but need only demonstrate that fact by a preponderance of the evidence. In making this ruling the district judge was of the opinion that the Supreme Court decision in Lego v. Twomey, 404 U.S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618 (1972), was controlling and that the standard prescribed for this circuit in United States v. Inman, 352 F.2d 954 (4 Cir. 1965), was no longer viable. *Inman*, which was decided shortly after the Supreme Court's decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), directed the courts of this circuit that upon proffer of a confession the judge should conduct a voir dire hearing on the issue of voluntariness in the absence of the jury, and upon the evidence presented at such hearing should determine the admissibility of the confession,

1. The record discloses that Stewart's handbag was opened by the officer at 12:30 p. m., just three and one-half hours after the robbery of the bank in Greenville.

1a. *See* United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

and permit it to go to the jury only if he was convinced beyond a reasonable doubt that it was voluntary. Our adoption of the reasonable doubt standard in *Inman,* however, was not dictated by constitutional considerations in the light of *Jackson,* but was based upon our supervisory power over district courts within this Circuit. Ralph v. Warden, Maryland Penitentiary, 438 F.2d 786, 793 (4 Cir. 1970). *See* Morris v. Boles, 386 F.2d 395, 402 (4th Cir. 1967). Aside from the District of Columbia [2] we apparently have been the only Circuit to require this high degree of proof, a position that has been the subject of some criticism.[3]

Whether, if this question were still open country, we would continue to adhere to the *Inman* standard may be debatable, but we conclude that *Lego* requires that we re-examine our position. Although the decision in that case involved the standard applied by the state courts of Illinois, the prefatory statement of the opinion indicates that at least one of the reasons for granting certiorari was to attain uniformity on this issue in the federal system.[4] Elaborating upon *Jackson,* the *Lego* Court stated that the requirement of "a reliable and clearcut determination that the confession was in fact voluntarily rendered" was satisfied if the judge was persuaded of that fact "at least by a preponderance of the evidence." The Court emphasized that the purpose of the voluntariness hearing is to determine the admissibility of the evidence and "has nothing whatever to do with improving the reliability of jury verdicts." In rejecting the petitioner's constitutional argument the Court stated that it was "unconvinced that merely emphasizing the importance of the values served by exclusionary rules is itself sufficient demonstration that the Constitution also requires admissibility to be proved beyond reasonable doubt." [5] That we fall within the reach of the decision is evident from the footnote to this observation:

> "It is no more persuasive to impose the stricter standard of proof as an exercise of supervisory power than as a constitutional rule. *Cf.* Ralph v. Warden, *supra,* n. 1, clarifying United States v. Inman, *supra,* n. 1; Pea v. United States, *supra,* n. 1." 404 U.S. at 488, n. 16, 92 S.Ct. at 626.

And while the Court specifically recognized the right of the States to adopt a higher standard, we read the plain thrust of its opinion as a direction that the federal courts shall follow the preponderance standard.[6] Upon this reading of *Lego,* the directions of *Inman* must be revised to admit those confessions into evidence where voluntariness is demonstrated by a preponderance of the evidence rather than the higher degree of proof. It follows, of course, that we affirm the action of the district judge in permitting Lester's confession to go to the jury.

### III.

[5] The third appellant, John Edward Lee, complains that the district court erred in admitting into evidence a

---

2. Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627 (1967).

3. "No other federal appellate court, with the single exception of one, has imposed the reasonable doubt standard in this context. All others have either avoided the problem entirely, or established some qualitative standard consistent with sound judicial experience and far less stringent than what we now adopt.

  "The use of our supervisory powers to impose this unique and unwarranted burden of proof is a misconception of the purposes of our supervisory powers."
  *Id.,* n. 2, 397 F.2d at 639 (Burger, Cir. J., dissenting).

4. Lego v. Twomey, 404 U.S. at 479, 92 S.Ct. at 621.

5. *Id.,* 404 U.S. at 488, 92 S.Ct. at 626.

6. *See* United States v. Watson, 469 F.2d 362, 365 (5 Cir. 1962).

"mug shot" photograph of him incident to the testimony of an identification witness. In support of this claim Lee relies upon our decision in United States v. Harman, 349 F.2d 316 (4 Cir. 1965), but we find that case readily distinguishable. All of the writing on Lee's photograph had been taped over and the court instructed the jury to draw no inferences from such concealed portions. For this reason, and since the photograph had legitimate probative relevance to demonstrate the difference in Lee's appearance at the time of trial as compared to the time of a prior photographic identification,[7] we find Lee's contention answered by the observation of the Second Circuit in United States v. Calarco, 424 F.2d 657, 661 (1970):

> "We conclude, however, that introduction of these file photographs, as modified was not likely to cause the jury to infer the existence of prior criminal convictions. It is much more likely that the jury assumed they were taken by the police when the appellants were arrested on the charges for which they were then being tried. The photographs in question, in the form in which the jury saw them, did not include the overt references to specific prisons and dates of incarceration which were apparent in the 'mug shots' whose introduction was held error in United States v. Harman, 349 F.2d 316 (4th Cir. 1965). Nor were they introduced to buttress testimony naming the persons pictured as the perpetrators of the crimes for which they were then being tried, as was held to be the case in Barnes v. United States, 124 U.S. App.D.C. 318, 365 F.2d 509 (1966)."

We have given careful consideration to the other points raised by the appellants and find them to be without merit. Accordingly, the convictions are affirmed.

.Affirmed.

---

7. *See* United States v. Sherman, 421 F.2d 198 (4 Cir. 1970); Dirring v. United States, 328 F.2d 512 (1 Cir. 1964).