UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                           No. 00-4839

JAMES EDWARD WILLIAMS,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-00-86-HO)

Argued: September 25, 2002

Decided: October 24, 2002

Before TRAXLER, Circuit Judge, HAMILTON,
Senior Circuit Judge, and Claude M. HILTON,
Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Chief Judge Hilton wrote the opinion, in which Judge Traxler and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Paul K. Sun, Jr., ELLIS & WINTERS, L.L.P., Raleigh, North Carolina, for Appellant. Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** John Stuart Bruce, United States Attorney, Anne M. Hayes,

Assistant United States Attorney, Thomas B. Murphy, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

HILTON, Chief District Judge:

This matter comes before the Court on James Edward Williams' appeal to his criminal convictions as an accessory after the fact for armed bank robbery under 18 U.S.C. § 2113(d) and aiding and abetting the malicious destruction of a vehicle under 18 U.S.C. § 844(i). Williams argues that there was insufficient evidence for a jury to convict him of either charge, and that the district court erred by admitting specific evidence at trial. Finding sufficient evidence to support his convictions and no error by the district court, we affirm.

On November 24, 1999, Teresa Nance drove Bruce Womack to a Centura Bank in Raleigh, North Carolina for the purpose of committing an armed robbery. As part of the plan, they were followed by Bobby Marsh and Marvin Raines in a Ford Taurus rented by Williams in Atlanta, Georgia. Because of a knee injury, Williams remained in Georgia throughout the period of the robbery.

The original plan called for Womack and Raines to rob the bank while Marsh and Nance waited in the getaway cars. When Womack entered the bank wearing a disguise, Raines decided not to follow through with the robbery and instead drove away with Marsh.

The bank manager noticed Womack's disguise as he approached the bank and called 911. Womack entered the bank with a gun, held the manager and other employees at gunpoint as he took the money, and began to leave the bank. As he was leaving the bank, he saw a police officer and exchanged fire with the officer as he ran to Nance's

getaway car. Womack continued shooting at the police as he and Nance attempted to flee the scene, but after a short chase the car went into a ditch. Womack ran from the vehicle but was quickly apprehended. Nance died shortly thereafter.

Marsh and Raines left the Centura Bank in the rental car just prior to the police arriving. Marsh called Williams later and told him that the bank robbery went bad, that Nance was dead, and that Womack was in jail. Marsh asked Williams what he wanted Marsh to do with the rental car. Williams told Marsh to "first get rid of the car," while Williams reported the car as stolen. "He was like, you know what I'm saying, blow the car up; burn it up." J.A. 154. After setting the rental car on fire, Marsh called Williams and told him the car was destroyed. Williams told Marsh he reported the car as stolen. The day after the robbery, Womack called Williams from jail and told him that he (Womack) had gotten caught, that Nance was dead, and that Marsh and Raines left him at the bank.

At trial, Womack testified about the events preceding the charged offenses. Womack met Williams in 1997 and testified that in 1998 the two men successfully robbed a Pizza Hut in North Carolina using a gun. Womack and Williams later moved to Atlanta, Georgia and became roommates. After becoming roommates, Womack testified that the two men returned to Raleigh, North Carolina numerous times in cars rented by Williams to commit armed robberies. Womack estimated that the two men had engaged in between eight and twelve armed robberies. Womack further stated that the two never committed a robbery without using a gun.

During one of their trips to Raleigh, Womack testified that he and Williams "started looking for bigger things to rob and that's when the banks came in." J.A. 85. Womack and Williams discussed the possibility of robbing numerous banks, including the Centura Bank. The men talked about having a second getaway car, and discussed using a rental car; they planned to blow up the rental car so it could not be traced back to the men. A few weeks before the robbery, Williams, Womack and Marsh drove around a few banks together. Since Williams was unable to travel to Raleigh, Womack testified that he planned to return to Atlanta after the robberies to "pay whatever

needed to be paid as far as me and [Williams] was concerned." J.A. 84.

Williams was charged and convicted by a jury as an accessory after the fact to armed bank robbery (Count Three) under 18 U.S.C. §§ 3 and 2 and of aiding and abetting the malicious destruction of a vehicle used in interstate commerce (Count Four) under 18 U.S.C. §§ 844(i) and (2). Williams was sentenced to a 150-month term of imprisonment on Count Three and 210-month term of imprisonment on Count Four, to be served concurrently. The district court also ordered three years' supervised release and restitution in the amount of $13,114.30. Williams filed timely notice of appeal, raising three issues: (1) whether the evidence presented at trial was sufficient to support his convictions; (2) whether the district court abused its discretion in admitting Rule 404(b) evidence of Williams' past robberies; and (3) whether the district court committed plain error in admitting into evidence an audio tape and photographs of Williams.

## *ANALYSIS*

I.   *The evidence presented was sufficient to support Williams' convictions.*

In reviewing a sufficiency of the evidence claim, this court decides whether any rational fact finder, viewing the evidence in the light most favorable to the government, could have found each element of the charged offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 312 (4th Cir.), *cert. denied*, 531 U.S. 1037 (2000). "[A]ppellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978). Because ample evidence was presented at trial to support his convictions, Williams' convictions of armed robbery as an accessory after the fact and aiding and abetting the malicious destruction of a vehicle are affirmed.

Williams was charged as an accessory after the fact to armed bank robbery under 18 U.S.C. §§ 2113(a) and (d), which provide:

> Whoever, by force and violence, or by intimidation, takes,
> . . . from the person or presence of another . . . money
> . . . belonging to, or in the . . . possession of, any bank
> . . . shall be . . . imprisoned . . . .

18 U.S.C. § 2113(a).

> Whoever, in committing . . . any offense defined in subsec-
> tion[] (a) . . . assaults any person . . . by the use of a danger-
> ous weapon . . . shall be . . . imprisoned . . . .

18 U.S.C. § 2113(d). Williams was also convicted for aiding and
abetting malicious destruction under 18 U.S.C. §§ 844(i) on two sepa-
rate grounds. The statute provides:

> Whoever maliciously damages or destroys, or attempts to
> damage or destroy, by means of fire . . . any . . . vehicle
> . . . used in interstate . . . commerce or in any activity affect-
> ing interstate . . . commerce shall be imprisoned . . . .

18 U.S.C. § 844(i).

Williams first argues that the evidence was insufficient to establish
that he was an accessory after the fact to armed bank robbery because
the evidence proved neither that he knew the bank robbery had been
completed nor that he knew the robbers had been armed. To support
a conviction for being an accessory after the fact, the government
must prove that: (1) an offense was committed against the United
States; (2) Williams had knowledge of that offense; and (3) Williams
provided relief, comfort, or assistance to prevent the apprehension,
trial, or punishment of the offender. *See generally United States v.
Neal*, 36 F.3d 1190, 1211 (1st Cir. 1994), *cert. denied*, 519 U.S. 1012
(1996).

Ample evidence establishes that Williams knew the bank robbery
had been committed. Williams discussed plans to commit a bank rob-
bery with Womack using two getaway cars, including a rental car,
and blowing up the rental car if things went badly. With this detailed
knowledge, once the bank was robbed in Raleigh, Marsh called Wil-

liams and told him about it. When Marsh asked Williams what to do with the rental car, Williams instructed Marsh to get rid of it. By directing Marsh to destroy the car, Williams was clearly aware that a bank robbery had been committed.

Moreover, sufficient evidence was presented at trial to establish that Williams had knowledge a gun had been used. Womack testified that he and Williams committed between eight and twelve bank robberies with a gun before the Centura Bank robbery. Womack also testified that the two never did a robbery without using a gun. Because of his previous experience in committing armed robberies with Womack, his participation in planning discussions concerning a future bank robbery, and the telephone call he received after the bank robbery, Williams had ample knowledge that the bank had been robbed and that the robbers had been armed.

Williams next argues that the evidence was insufficient to establish his conviction for malicious burning because evidence supporting his conviction was incredible as a matter of law, it did not establish he acted maliciously, and there was insufficient proof of an interstate nexus. Each of these arguments is without merit.

Williams first challenges the testimony of Womack and Marsh concerning the telephone calls to him after the bank robbery, stating that the evidence was incredible as a matter of law because the calls were not reflected in Williams' telephone records. Testimony is incredible as a matter of law, and thus cannot form the basis for a conviction, only when it is "so unbelievable on its face that it defies physical laws." *United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989), *cert. denied*, 493 U.S. 1087 *and* 496 U.S. 926 (1990). However, there was no testimony that anyone actually spoke to Williams at that particular number, nor testimony concerning the physical location of that number. Moreover, the phone record does indicate that certain unidentified calls were placed to Williams at approximately the same times Marsh testified to calling him. As such, the evidence of these phone calls was not incredible as a matter of law.

The government also provided sufficient evidence to establish that Williams acted with malice. At trial, Marsh testified that Williams instructed him to destroy the rental car and reported the car as stolen.

The government must prove that "the defendant acted intentionally or with willful disregard of the likelihood that damage or injury would result" in order to prove he acted maliciously under 18 U.S.C. § 844(i). *United States v. Gullett*, 75 F.3d 941, 948 (4th Cir.), *cert. denied*, 519 U.S. 847 (1996). Williams' statements to Marsh to get rid of the car and to blow it up or burn it up proves malice.

Finally, Williams argues that the government failed to prove an interstate commerce nexus. However, the government met this burden when it presented testimony that a green Ford Taurus rented in Williams' name in Atlanta, Georgia, was used in the robbery of the Centura Bank in Raleigh, North Carolina. Williams challenges the use of testimony by the co-defendants that the Taurus was a rental car under Federal Rule of Evidence 1002 because the evidence was offered to prove the contents of the rental agreement. This argument fails, however, since the testimony about the rental contract was merely introduced to establish the status of the car as a rental car.

II. *The district court did not abuse its discretion in admitting evidence pursuant to Federal Rule of Evidence 404(b).*

Williams challenges the admission of testimony concerning his involvement with Womack in armed robberies that preceded the charged offenses, complaining that he did not get proper notice, the evidence proved only Williams' propensity to commit crimes, the prejudicial effect of the evidence was substantially outweighed by its probative value, and the prejudicial effect of the evidence was compounded when the district court judge made an improper comment from the bench.

Federal Rule of Evidence 404(b) reads, in relevant part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

The combined test for admissibility under Federal Rules of Evidence 403 and 404(b) requires that (1) the evidence is relevant to some issue other than character; (2) the evidence is necessary to prove an essential claim or element of the offense; (3) the evidence must be reliable; and (4) the probative value of the evidence must not be substantially outweighed by confusion or unfair prejudice. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997), *cert. denied*, 523 U.S. 1101 (1998). The district court has broad discretion in determining whether to admit evidence pursuant to Rule 404(b), and abuse of such discretion will not be found unless its exercise was arbitrary or irrational. *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998).

Williams first argues that the notice given by the government concerning the anticipated 404(b) evidence was insufficient because it did not disclose any of the detailed testimony the government planned to introduce. The language of Rule 404(b) mandates notice by the government, upon request by the defendant, "of the general nature of any such evidence it intends to introduce at trial." The government here disclosed that "[t]he general nature of such evidence is the defendant's knowing and willing participation in other acts of violence, including armed robberies committed by the defendant in the time period preceding the commission of the instant offense." J.A. 14-15. This evidence was sufficient to put Williams on notice that the prior armed robberies he committed with Womack might be used during his trial.

Williams next claims that Womack's testimony that he and Williams previously committed eight to twelve robberies, that all the robberies involved guns, and that Williams had rented cars in Atlanta for their use in the robberies committed in Raleigh, was improper propensity evidence under Rule 404(b). Here, the evidence of prior armed robberies was probative to both intent and knowledge. Because the government was required to prove Williams knew the bank robbery was committed and that a gun would be used, and he intended to assist the offenders, introduction of Womack's testimony was proper. *See generally Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 52 (4th Cir. 1993) (stating that when intent to a crime is at issue, this court regularly permits admission of prior acts to prove that element).

Williams further contends that Womack's testimony should have been excluded because it was unduly prejudicial, confusing, and time

consuming as prohibited by Rule 403. However, exclusion of relevant evidence under Rule 403 is done sparingly as an "extraordinary remedy." *United States v. Adkins*, 196 F.3d 1112, 1117 (10th Cir. 1999), *cert. denied*, 529 U.S. 1030 (2000) (citation omitted). Admission of Williams' prior armed robberies was not unduly prejudicial. Because the trial court did not act arbitrarily or irrationally in admitting this evidence, its decision will not be disturbed. *United States v. Masters*, 622 F.2d 83, 88 (4th Cir. 1980).

Finally, Williams argues that a single comment by the district court judge during testimony by a co-defendant compounded the undue prejudice caused by admission of the Rule 404(b) evidence. During the testimony of co-defendant Raines, Raines told the jury that Womack had introduced him to Williams in a sports bar. Raines and Williams were exchanging small talk about both of them being in prison in the past, and Raines stated he was "not going to mess with nobody that ain't been to the penitentiary or nothing like that." J.A. 217. Upon defense counsel objection, the trial court overruled, observing "It's their culture." *Id.*

Comments from the bench are examined to determine whether they are so prejudicial as to deny a party a fair trial. *United States v. Godwin*, 272 F.3d 659, 673 (4th Cir. 2001); *United States v. Gastiaburo*, 16 F.3d 582, 589-90 (4th Cir.), *cert. denied*, 513 U.S. 829 (1994). Williams contends that by making this comment, the court branded him a professional robber to the jury. However, this ambiguous statement, even read in a light most favorable to Williams, does not rise to the level of judicial interference so egregious as to deny Williams an opportunity for a fair and impartial trial. In short, this comment, to which Williams did not object, was not prejudicial under the plain error standard. *United States v. Castner*, 50 F.3d 1267, 1272 (4th Cir. 1995).

III.    *The district court did not commit plain error in admitting an audio tape initialed by co-defendants or in admitting photographs of the individuals involved in the charged offenses.*

Williams finally argues that his convictions should be reversed because the court admitted a tape recording that had been initialed by Williams' co-defendants, as well as an exhibit displaying photographs

of Williams and the other persons involved in the charged offense. The challenged evidence was admitted without objection and is therefore reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732-33 (1993).

Williams contends that he is entitled to relief, because an audio cassette tape of the 911 call reporting the rented vehicle as stolen that was admitted into evidence bore the handwritten initials of his four co-defendants. He claims that the initials constituted hearsay and that the initials of a non-testifying co-defendant Mitchell violated his constitutional rights. *See* Fed. R. Evid. 801. The initials placed on the tape were not offered into evidence for truth, but rather were used at trial to establish that the witnesses recognized the government's exhibit. Moreover, even if the initials could give rise to the inference that the persons identified by the initials recognized Williams' voice, the evidence was cumulative to the testimony of three separate co-defendants. Thus, the presence of the initials cannot be deemed prejudicial.

Williams also challenges the admission of an exhibit containing photographs of the persons involved in the charged offenses, characterizing them as mug shots. Mug shots used for comparative purposes are generally indicative of past criminal conduct and are not admissible since they may create an inference of such conduct in the minds of the jurors. *United States v. Hines*, 955 F.2d 1449, 1455 (11th Cir. 1992). However, these photographs were offered to identify the participants and which crimes they committed. Furthermore, the pictures used did not have the characteristics usually associated with mug shots; Williams was in plain clothes in his picture. There were no references to prison or dates of incarceration. *See United States v. Johnson*, 495 F.2d 378, 383-84 (4th Cir.), *cert. denied*, 419 U.S. 860 (1974) (permitting mug shots over defense objections). The pictures lacked the indicia of criminal activity and were properly admitted.

*AFFIRMED*